Mary BARNES; Cynthia Conger; Karen Crary; Belinda Foster; Debra Gonzalez; Brenda Hall; Pamela Miller; Trisha Parker; Marcie Sanz; Cheri Sousa; Diane Wolford, Plaintiffs–Appellants,

v.

John D. HEALY, Director, California Department of Social Services; Daniel E. Lungren, Attorney General; Louis W. Sullivan, M.D., Secretary of Health and Human Services, Defendants–Appellees.

No. 92–15520.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 17, 1992.

Decided Nov. 25, 1992.

crab and fish processing equipment and the throttle controls.

Carole S. Ungvarsky, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., Brian H. Paddock, Legal Services of Northern Cal., Redding, Cal., for plaintiffs-appellants.

Eileen Gray, Deputy Atty. Gen., Sacramento, Cal., for defendants-appellees.

Before: ALARCON, BOOCHEVER, and HALL, Circuit Judges.

BOOCHEVER, Circuit Judge:

This is an appeal from an order of the district court defining the scope of a preliminary injunction issued in favor of appellants, a class of custodial parents participating in California's child support enforcement program. We are called upon to decide what form of notice of the state's collection and distribution of child support payments is required to satisfy due process. We affirm the district court's order in part and reverse in part.

## BACKGROUND

Appellants represent a class of custodial parents ("the class") who receive or have applied for child support enforcement services from the California Department of Social Services ("DSS"). The class includes both families receiving Aid to Families with Dependent Children ("AFDC") and families not collecting AFDC benefits. Appellee Healy is the Interim Director of DSS. The class action brought in the district court alleged, *inter alia*, that DSS' denial of meaningful notice of child support collections and distributions violated procedural due process.

California participates in the federal AFDC program. *See* 42 U.S.C. §§ 601–17 (1988 & Supp. II 1990). To receive federal funds, a state must establish and operate a child support enforcement program in compliance with the requirements of Title IV–D of the Social Security Act. *Id.* § 602(a)(27); *see id.* §§ 651–69. Appellee DSS is the single state agency charged with administering California's child support enforcement program. Cal.Welf. & Inst.Code § 10600 (West 1991). DSS has delegated most of the enforcement functions to the Family Support Divisions of County District Attorney's Offices. *Id.* §§ 11475, 11475.1.

The statutory and regulatory framework requires AFDC families to assign their right to receive child support to the IV–D agency. These families are entitled to receive a "pass-through," or "disregard,"

consisting of the first $50 in child support payments collected on their behalf in the month when due; this amount is disregarded in determining their eligibility for AFDC benefits. 42 U.S.C. §§ 602(a)(8)(A)(vi), 657(b)(1) (1988). Any support payments in excess of this pass-through are first used to recoup AFDC paid in the month of collection. If the amount of support collected exceeds the amounts retained as reimbursement for AFDC plus $50, then the family is entitled to that additional amount. *Id.* § 657(b); 45 C.F.R. § 302.51(b)(5) (1991). Former AFDC recipients who continue to receive child support enforcement services are entitled to current support payments as well as past arrears collected in excess of the amount previously paid as AFDC. 42 U.S.C. § 657(c) (1988); 45 C.F.R. § 302.51(f) (1991). Families who have never received AFDC may also participate in the child support enforcement program and are entitled to receive the entire amount of support collected by the state. *See* 42 U.S.C. § 654(6) (1988); 45 C.F.R. § 302.33(a) (1991).

The statute requires annual notice to former and current AFDC recipients of the amount of support collected by the state;[1] no notice is statutorily required for non-AFDC families. 42 U.S.C. § 654(5) (1988). The implementing regulations require only that this notice include the total amount of support collected and paid for the year and, if more than one absent parent is paying support, a breakdown as to each absent parent's payments for the year. 45 C.F.R. §§ 302.54, 305.45(a) (1991).

The class alleged in the district court that the annual notice failed to provide the information necessary to evaluate the timing and accuracy of the agency's disbursements and thus violated due process with regard to custodial parents' property rights in state-collected child support payments. On September 26, 1991, the district court granted a preliminary injunction ordering, in addition to the notice required by statute and regulation, "meaningful periodic no-

---

**1.** Effective January 1993, California will be required to provide monthly notice of collections, although the state intends to seek a waiver permitting quarterly notice only. *See* Notice of Assigned Support Collected, 57 Fed.Reg. 30,658 (1992) (to be codified at 45 C.F.R. § 302.54).

tice" to all class members. Pursuant to the court's order, DSS submitted a written plan attempting to outline an adequate individualized notice procedure, and the class submitted its objections to the proposed plan. The parties engaged in settlement discussions between themselves and two days of conference in chambers with the court's participation in an attempt to resolve controverted issues. On January 13, 1992, the district court issued an order setting forth the elements of the notice required by the preliminary injunction. The class filed a timely notice of appeal on March 11, 1992.

On appeal, the class contends that the district court's order failed to provide for meaningful notice sufficient to avoid the risk of erroneous deprivation of their property interests. The class challenges three specific elements of the district court's order: (1) the order permits the notice to specify the actual date of the agency's receipt of support payments, rather than the federally defined collection date; (2) the order states that while AFDC recipients must be informed of the reason for the non-payment of a pass-through, this requirement is satisfied by a statement that any money collected was not "current support"; and (3) the order states that procedural due process requires notice only to AFDC families and not to non-AFDC families who receive the same enforcement services. The class also challenges the district court's schedule for issuance of quarterly notices. The district court had jurisdiction under 28 U.S.C. § 1343(a)(3), and we have jurisdiction under 28 U.S.C. § 1292(a)(1).

## DISCUSSION

### I. *Standard of Review*

Healy does not question the district court's granting of the preliminary injunction; only the scope of the injunctive relief is at issue on this appeal. We review a challenge to the scope of preliminary in-

junctive relief for abuse of discretion, erroneous legal standards, or clearly erroneous factual findings. *Northern Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 471 (9th Cir. 1986). An error of law constitutes an abuse of discretion. *See Northern Alaska Envtl. Ctr. v. Lujan*, 961 F.2d 886, 889 (9th Cir.1992).

When injunctive relief is sought against a state agency or official, such relief "must be no broader than necessary to remedy the constitutional violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1086 (9th Cir.1986), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Thus,

> [w]e will scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' constitutional rights and does not require more of state officials than is necessary to assure their compliance with the constitution. Within these parameters, we will defer to the district court.

*Id.* at 1089; *see also Gary H. v. Hegstrom*, 831 F.2d 1430, 1433 (9th Cir.1987) (vacating district court order on management of juvenile facility for "far exceed[ing] anything remotely required by the fourteenth amendment"); *Hoptowit v. Spellman*, 753 F.2d 779, 785 (9th Cir.1985) (district court may only require corrections bringing conditions above constitutional minima); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.1982) ("The function of a court is limited to determining whether a constitutional violation has occurred ... and to fashioning a remedy that does no more and no less than correct that particular constitutional violation.").[2] In the case of a preliminary injunction, we keep in mind that the district court may alter its position if and when it makes the injunction permanent. *See Beltran v. Myers*, 677 F.2d 1317, 1320 (9th Cir.1982).

### II. *Adequacy of Notice Under the District Court's Order*

The district court's finding that both AFDC and non-AFDC families have a pro-

---

**2.** Although the cited cases involved permanent injunctions, the federalism concerns underlying the limited scope of injunctive relief against state agencies or officials are equally applicable in the context of preliminary injunctive relief, and district courts should exercise the same restraint in both situations.

tected interest in state-collected child support payments is not challenged on appeal. The central issue is what process is due to guard against the risks of non-payment and delay in child support distributions that the district court found to exist.

Once the district court determined that class members had protected property interests that were subject to a substantial probability of erroneous deprivation and a significant threat of irreparable injury, it determined that more process was likely required to satisfy due process. The court awarded preliminary relief in the form of notice that was intended to permit class members to ascertain whether they had received all the payments to which they were entitled. The court's analysis was properly guided by balancing the factors set out in *Mathews v. Eldridge:*

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

The district court concluded that appellants had made a sufficient showing that "due process requires at a minimum ... meaningful periodic notice to all class members." The court reasoned that "[p]laintiffs, those individuals with greatest incentive to bring error to the agency's attention, should have an opportunity to evaluate error and ultimately to avail themselves of some form of administrative adjudicatory process." The court additionally found that the existing annual notice procedures "[did] not provide the kind of information necessary to evaluate the timing and accuracy of the distributions." The class now alleges that the notice fashioned by the district court is not "meaningful" and is insufficient to enable custodial parents to

detect errors in DSS' accounting and distribution of collected support.

## A. Date of Collection

■ In its January order, the district court required that "AFDC parent class members shall receive notice specifying the actual (not necessarily the legal) date of collection, and the amount of each collection." The class challenges this element of the court's order on the ground that only the federally specified collection date can allow custodial parents to determine whether the IV–D agency has erred in denying them a pass-through payment.

California uses several different methods to collect child support payments from absent parents. For example, the state can order wages withheld, intercept a tax refund or lottery winnings, or withhold unemployment or state disability benefits. For each of these methods of collection, the "date of collection" is defined by federal regulations. For many methods of collection, the "date of collection" is not the date that the IV–D agency receives the payment. For example, where the collection takes the form of withholding from wages, unemployment benefits, or state disability benefits, the "date of collection" is the date of withholding, regardless of the date that the funds reach the IV–D agency. *See* 45 C.F.R. § 302.51(a)(4) (1991). The "date of collection" for support payments collected in another state is the date that the payment is received by the collecting agency in the sister state, regardless of when the payment is transferred to the California IV–D agency. *Id.* § 302.51(a)(5).

In *Vanscoter v. Bowen,* 706 F.Supp. 1432 (W.D.Wash.1988), *aff'd in part rev'd in part sub nom. Vanscoter v. Sullivan,* 920 F.2d 1441 (9th Cir.1990), a class action raising notice issues similar to those involved in the present case, the district court held that then-existing notice procedures that failed to indicate amounts received or how they were allocated violated due process:

> [W]ithout being told the total amount of support collected or how it is allocated, the recipient has no adequate opportunity to contest the agency's decision. Un-

less informed as to *when the payments are made* and in what amounts, the recipient cannot assess whether allocation has been made in accordance with the distribution scheme required by 42 U.S.C. § 657(b).

*Id.* at 1439 (emphasis added). The court held that "[d]ue process requires that the recipients be given sufficient notice to permit them to determine whether they are receiving the support to which they are entitled." *Id.* We affirmed the district court's holding on the notice issue, interpreting the lower court opinion as requiring the state to provide, among other things, "prompt notice of the date support payments are *collected.*" *Vanscoter v. Sullivan,* 920 F.2d 1441, 1450 (9th ·Cir. 1990) (emphasis added).[3]

Notice of the legal date of collection is imperative if AFDC custodial parents are to be able to spot erroneous denials of pass-through payments. These class members are entitled to receive the first $50 of any support payment collected in the month when due, even if the IV–D agency's receipt of the funds is delayed. 45 C.F.R. § 302.51(b)(1) (1991). For example, if the state, using the "date of collection" as defined in the regulations, collects $125 in May and $125 in June for current child support, the parent is entitled to two $50 pass-through payments even if the IV–D agency actually receives both $125 payments in June. If the state collects the entire $250 in June and nothing in May, however, the custodial parent receives only one $50 pass-through.

The date of collection is also important to custodial parents who are no longer receiving AFDC. Except for tax refund intercepts, any money collected during a month is treated as payment of the support obligation for that month, up to the court-ordered amount of current support. 45 C.F.R. § 302.51(a)(1) (1991). The state may retain the remainder as reimbursement for past AFDC payments. *Id.* § 302.51(b)(2). If the absent parent's wages are withheld in both April and May but the local IV–D agency does not receive the money until June 1, the custodial parent should receive current child support payments for both April and May. If the custodial parent is only informed of the date of receipt, it will appear as if she is entitled to only one support payment for June and none for April or May.

■ Due process mandates notice that provides the kind of information necessary to evaluate the timing and accuracy of the distributions. *See Vanscoter v. Bowen,* 706 F.Supp. at 1439. Notice of the actual date of receipt, rather than the federally defined date of collection, fails to satisfy this standard. The statute authorizes a pass-through of "the first $50 of any payments for a month received in that month, and the first $50 of payments for each prior month received in that month which were made by the absent parent in the month when due." 42 U.S.C. § 657(b)(1) (1988). As we observed in *Vanscoter,* this language "on its face distinguishes the date a support payment is 'received' from the date on which it is 'made.'" *Vanscoter v. Sullivan,* 920 F.2d at 1449. Because only the various official dates of collection are relied on in determining eligibility for pass-through payments, the actual date of receipt is of no use at all to class members attempting to spot errors or delays and determine the payments due them. Providing class members with the date of collection, on the other hand, is of great value in reducing the risk of erroneous nonpayments and underpayments of child support.

Finally, we recognize that DSS is already required by law to determine the federally defined date of collection for its own use in distributing payments. *See, e.g.,* 45 C.F.R. § 302.51(a)(4) (1991) (if employer fails to report date of wage withholding, "the IV–D agency *must* reconstruct that date")

---

3. The date requirement in *Vanscoter* was not contested on appeal, and this court's comments regarding this requirement therefore may not be binding. It is noteworthy, however, that other district courts have followed *Vanscoter* in holding that notice of the date of collection is required to enable support recipients to challenge determinations of the IV–D agency. *See Kenyon v. Sullivan,* 761 F.Supp. 951, 961 (D.R.I. 1991); *Beasley v. Ginsberg,* Civ. No. H–86–619–PCD, 1989 WL 202144, at *10–11, 1989 U.S.Dist. LEXIS 16682, at *34–35 (D.Conn.1989)

(emphasis added). Thus, under a balancing of the *Mathews* factors, there is no significant administrative burden to outweigh the probable value of this procedural safeguard. In fact, the government has failed to make a showing of any hardship, however minimal, from being required to inform class members of the federally defined date of collection. Under these circumstances, we hold that the federally defined collection date is necessary to ensure meaningful notice that sufficiently protects appellants' property interests.

### B. *Explanation for No Pass–Through Payment*

The district court's order required that notice to AFDC parent class members explain the reason for non-payment of a pass-through. The order stated, however, that the required explanation "will be sufficient if it simply indicates that the AFDC parent did not receive a disregard because any money that was collected was not current support." The class challenges this element of the court's order on the ground that the permitted general explanation is nothing more than a conclusory statement, the accuracy of which cannot be determined by the AFDC recipient without a brief statement of its factual underpinnings.

■■■■ Due process requires notice that gives an agency's reason for its action in sufficient detail that the affected party can prepare a responsive defense. *See Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). There are three situations in which a pass-through payment is not required: (1) no support is collected at all; (2) the date of collection rules indicate that the payment was not collected in the month it was due; or (3) the type of collection is not applicable to current support and thus does not create a pass-through payment (i.e., state or fed-

eral income tax refund intercepts, *see* 45 C.F.R. § 302.51(a)(3) (1991)). A custodial parent who depends on pass-through payments gets no meaningful information from the conclusory statement that "any money that was collected was not current support." Such a parent has no way of determining from the face of that notice why collected payments were not deemed current support and what information she needs to challenge the agency's determination. "Without notice of the specific reasons for denial, a claimant is reduced to guessing what evidence can or should be submitted in response and driven to responding to every possible argument against denial at the risk of missing the critical one altogether." *Gray Panthers v. Schweiker*, 652 F.2d 146, 168–69 (D.C.Cir. 1980). Healy's response that the doubting parent can request further explanation or an accounting misses the point, for the burden of notice comporting with due process is to be borne by DSS, not by custodial parents. *See Vanscoter v. Bowen*, 706 F.Supp. at 1439.

■■■■ Furthermore, a weighing of the *Mathews* factors suggests that the administrative burden of providing an explanation for denying a pass-through is minimal in light of the added potential for spotting erroneously withheld payments. DSS must already determine the reason for denying a pass-through, and the class has proposed concise explanatory statements that could likely be added to notice forms with a keystroke.[4] As with the federally defined date of collection, a meaningful statement of the reasons for denial of a pass-through merely reports information that DSS must have. Thus there is no significant administrative burden to outweigh the probable value of this additional safeguard against erroneous deprivation of pass-through payments. We hold that, under these circumstances, meaningful notice requires a specific rea-

---

4. While it is not this court's function to dictate the form of notice, we regard the following explanations as satisfactory:

   1. No child support of any kind was collected for the month of ――. If no support is collected for a month, there is no support to pass through to you.

2. The collection dated ―― was from the interception of a [state] [federal] income tax refund. Under federal regulations, tax refund intercepts can only be applied to past due child support and the repayment of AFDC previously paid to you.

son for denying a pass-through. *Cf. Dilda v. Quern,* 612 F.2d 1055, 1057 (7th Cir.) (per curiam) (AFDC notices that state the "ultimate reason" for reduction or termination of benefits, but do not provide a breakdown of income and allowable deductions, violate due process), *cert. denied,* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980).

## C. *Notice to Non–AFDC Families*

■ As stated in its initial order granting the preliminary injunction, the district court found that non-AFDC parent class members (including former AFDC recipients and those who have never received AFDC) had made a sufficient showing that they have a protected property interest in agency-collected child support payments and are entitled to meaningful notice.[5] The court's subsequent order establishing the scope of injunctive relief, however, stated that due process does not require DSS to provide notice to non-AFDC parent class members. Healy concedes that this contradiction is "confusing," and suggests that the district court did not intend to indicate that no notice was required for non-AFDC parent class members. Healy has represented to this court that he will comply with the preliminary injunction by issuing notices of collections and distributions to non-AFDC parents, and he contends that the issue is therefore moot.

■ Voluntary cessation of an illegal course of conduct does not render moot a challenge to that course of conduct unless (1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *see DeFunis v. Odegaard,* 416 U.S. 312, 318, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974) (per

curiam). The court's power to grant injunctive relief survives discontinuance of the illegal conduct. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). The burden of demonstrating mootness is a heavy one. *Id.*

■ Although we commend Healy for his willingness to comply voluntarily with the preliminary injunction, we do not regard this issue as moot. Absent resolution of the court's conflicting orders, DSS might find it convenient at any time to dispense with notice to non-AFDC custodial parents. The entire class is entitled to the protection of an enforceable order to ensure that past due process violations will not be repeated.

■ We hold that the district court abused its discretion in withholding relief from non-AFDC parents, without explanation, after determining that these class members had demonstrated a need for preliminary injunctive relief and after awarding such relief to the rest of the class. On remand, the district court shall modify the preliminary injunction to include equivalent notice to non-AFDC parent class members, unless it determines that *Mathews* requires a different accommodation.

## III. *Timeliness of Notice*

The district court allowed for a 45–day period between the close of a quarter and the issuance of the required notices. The class argues that, because the federal Office of Child Support Enforcement requires most child support distributions to be made within fifteen days of collection, 45 C.F.R. § 302.32(f) (1991), the district court abused its discretion in allowing this 45–day period for the preparation of notices.

■ The question of the time needed for preparation was not addressed in DSS' proposed plan for issuing notices, in the class' objections to DSS' proposed plan, or

---

**5.** Although custodial parents not currently receiving AFDC are generally entitled to receive all support collected by the state, there are situations in which DSS does not forward all such funds. For example, all collections from wage withholding "must include an amount to be applied toward liquidation of overdue support."

45 C.F.R. § 303.100(a)(2) (1991). Interceptions of federal or state income tax refunds may be applied only to past due support. *Id.* §§ 302.60, 303.102. Thus all or part of a collection may be withheld from a non-AFDC custodial parent to be applied to the repayment of past AFDC benefits.

in the parties' settlement negotiations.[6] This court may find an abuse of discretion when the record contains no evidence to support the district court's decision. *United States v. Schlette*, 842 F.2d 1574, 1577 (9th Cir.), *amended*, 854 F.2d 359 (9th Cir. 1988). DSS, however, submitted evidence that supports the district court's decision to allow 45 days for preparation of notices. Uncontroverted evidence in DSS' plan for implementation indicated that approximately one million notice forms will be needed annually and that reprogramming of counties' automated systems will be required. Given the extensiveness of the plan and the preliminary nature of the injunction, the district court could conclude that 45 days was a reasonable time for preparation of notices. In fact, the district court noted the transitory nature of the relief granted, stating that "[i]t *presently* does not appear unreasonable ... for defendants to send notices out 45 days after the close of each quarter." The district court is free to amend its timetable at the permanent injunction stage if the 45–day period appears excessive in practice. We therefore conclude that the district court's allowance of 45 days for preparation of notices did not constitute an abuse of discretion.

■■■■■■ The class also challenges the district court's timetable for implementation of its order. In its January order, the district court directed that the first quarter to be subject to the new notice requirements would be July–September 1992, with the first notices to be issued in mid-November 1992. The issue of when the first notices are to be issued is now moot, and we decline to decide it. *See United States v. Oregon*, 718 F.2d 299, 302 (9th Cir.1983) (appeal is moot if reviewing court can no longer grant effective relief). With regard to whether information should be compiled and notices sent regarding benefits received prior to July 1992, we hold that the district court did not abuse its discretion in allowing DSS six months to train employees and develop appropriate forms, procedures, rules, and computer software before it began collecting and compiling the notice information in July 1992. Nor did the court abuse its discretion in failing to require retroactive notices for earlier periods.

## CONCLUSION

"The problem of welfare in the United States is, to a considerable extent, a problem of the non-support of children by their absent parents." S.Rep. No. 1356, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 8133, 8145. The class produced evidence in the district court showing that California's child support enforcement program has been plagued by widespread systematic errors and delays, and the court granted preliminary relief based on its determination that the class had demonstrated a significant threat of irreparable injury and a probability that their claims would succeed. *See Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir.1982). In fashioning that relief, however, the district court ignored the evidence that the legal collection date and the reasons for withholding pass-through payments were critical elements of meaningful notice. The court further abused its discretion by withholding relief from part of the class while granting it to the remainder, ignoring its earlier finding that relief was warranted for all. The court did not abuse its discretion, however, in the timetable it established for relief or in its schedule for issuance of quarterly notices.

We therefore vacate the district court's order of January 13, 1992, and remand for entry of an order setting the terms of the preliminary injunction in a manner consistent with this opinion and for such further proceedings as may be necessary. The court is free to modify its timetable for implementation accordingly.

Costs of appeal are awarded to the appellants. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**6.** The time required for issuance may have been discussed in the parties' settlement discussions with the district court, but there is no record of those proceedings.