*115 ORDER REMANDING CASE TO INTERNAL REVIEW BOARD
KATHARINE ENGLISH, Chief Judge.
ISSUE PRESENTED:
Petitioner seeks judicial review of the final employment decision made by Spirit Mountain Casino to terminate her employment involuntarily. Before seeking judicial review, petitioner sought and obtained review of the final employment decision by an Internal Review Board (IRB). In this judicial review proceeding, she alleges that her filing was “arbitrary and capricious,” and that she was denied due process.
The pivotal issue is whether petitioner received constitutionally adequate notice before the IRB hearing. For the reasons that follow, the Court concludes that the notice she received was not constitutionally sufficient, and that she was, therefore, deprived of due process. The Court therefore remands the case to the IRB for further proceedings.
Because of this disposition, the Court does not reach the issue of whether her termination was arbitrary and capricious.
BACKGROUND:
Petitioner worked at Spirit Mountain Casino from September 1998 until she was involuntarily terminated on January 8, 2000. Her last position with the Casino *116 was as a housekeeper. The record produced by the Casino indicates that petitioner had a history of disciplinary problems. The event that culminated in her firing, however, took place on January 8, 2000. On that day, petitioner was being trained to collect Casino trash. According to the Casino’s version of the event, which petitioner disputes, petitioner’s instructor told her to take her lunch at 11:45 a.m. and to return to work by 12:15 p.m. Despite that instruction, petitioner did not return until 12:37 p.m., when she came “rushing” into a coatroom. When asked, petitioner provided no explanation for her tardiness, and she became hostile toward her instructor.[1] On the following Monday, January 10, 2000, petitioner’s instructor spoke with her supervisor and with Human Resources staff about petitioner’s lateness and her hostile manner. The decision was then made to involuntarily terminate petitioner’s employment.
The “employee counseling form” that petitioner received when she was terminated described only the events of January 8, 2000, that culminated in petitioner’s firing. The “nature of counseling” was described as being “attendance,” “insubordination,” “failure to follow instructions,” “improper conduct,” and “violation of company rules.” She was said to be “non-responsive to direction given to her,” to have “created a hostile working environment,” and to have “established an atmosphere of distrust among fellow workers.” The “employee counseling form” also stated that petitioner was “unwilling to work with supervision to correct [her] attitude problems.”
Pursuant to the Employee Manual, petitioner sought review by an Independent Review Board (IRB). She was sent a letter dated January 20, 2000, informing her that the hearing would be held on February 11, 2000. (Exhibit 2 of the record). This letter also advised her that she had a meeting set with an Employee Development Representative, who was to act as her “coach” to go over the IRB process with her. This meeting apparently occurred around January 27, 2000. At some point, she was also provided with a written description of the procedures involved in an IRB hearing. (Exhibit 3 of the record).
Before the IRB hearing, she did not receive any additional written notice describing the cause of her termination or the factual issues that would be considered by the IRB. Petitioner states she received no verbal description either. The Casino contends, in its brief filed with this Court, that petitioner was told, in advance of the hearing, “that while her termination was a result of her late return from lunch on January 8, 2000, Casino management was free to address anything in her employment history at the Internal Review Hearing.” Although that assertion may be factually correct, the record does not support it.
At the IRB hearing, management presented evidence concerning petitioner’s history of disciplinary problems. Petitioner was excluded from the hearing during that testimony. Her own statements to the Board indicate that she believed the hearing involved only the final incident that led to her firing.[2] At the conclusion *117 of the hearing, the IRB upheld management’s decision to fire petitioner. She then timely filed for judicial review by this Court.
STANDARD OF REVIEW:
Pursuant to the Employment Action Review Ordinance this Court must limit and base its review on “the record,” as submitted by the parties. Tribal Code 255.5(d)(7). In this case, the record is comprised of fifteen exhibits and a transcript of the IRB hearing.
Under Section 255.5(d)(8), the Court may remand or reverse a Final Employment Decision if it is arbitrary and capricious; or an abuse of discretion; or if the employees rights have been violated under the Tribal Constitution or other Tribal or Federal law.
ANALYSIS:
Petitioner contends a violation of due process. This Court has limited review of final employment decisions, but that review encompasses the issue of whether an employee’s substantial lights have been denied because the final employment decision violates applicable provisions of the Tribal Constitution or of federal law. Here, although petitioner appears pro se, and her briefing is thus understandably un-lawyerly, it appeal's that among her contentions is the assertion that the notice she received in advance of the IRB hearing was not sufficient to satisfy due process. That contention is within the scope of the court’s review under the Employment Action Review Ordinance.
The Court applies a two-part analysis. This Court “engage[s] in a two-part analysis when addressing a procedural due process argument, asking, first, whether the plaintiff[ ] ha[s] a protected interest at stake, and if so, what process is due.” Bliek v. Palmer, 102 F.3d 1472, 1475 (8th Cir.1997) (citation omitted).
Employment is a protected property interest if created by rules, understandings, and laws. The United States Supreme Court, in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), held that:
[Property interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, “property” denotes a broad range of interests that are secured by “existing rules or understandings”. A person’s interest in a benefit is a “property” interest for due process purposes if there are such rules or mutually explicit understandings that support [a] claim of entitlement to the benefit and that may [be] invoke[d] at a hearing.
Property interests, and in particular property interests in continued employment, “are not created by the Constitution, ‘they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state [or Tribal] law[.]’ ” Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985), quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
Where thus established, the property interest in employment has been given high regard by the Supreme Court. In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985), the Court stated:
[T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood (citations omitted ). While a fired worker may find employment elsewhere, doing so will take some *118 time and is likely to be burdened by the questionable circumstances under which he left his previous job.
The Confederated Tribes of Grand Ronde’s Ordinances, rules, and understandings create a property interest in continued employment. Here, the Tribe’s Constitution, Indian Civil Rights Act, Governmental Purpose Ordinance, Employee Action Review Ordinance, and the Tribal Human Resources Guidebook and Employee Handbook and the Personnel Management Ordinance create Petitioner’s property interest in continued employment.
Tribal Constitution and Indian Civil Rights Act. The Tribal Constitution, Article III, Sec. 3(k) states that: “The Tribe shall provide to all persons within its jurisdiction the rights guaranteed by the Indian Civil Rights Act of 1968.” The ICRA includes the provision that, “No Indian Tribe in exercising powers of self-government shall ... deny to any person within its jurisdiction the equal protection of its laws oi- deprive any person of liberty or property without due process of law.” 25 USC 1302(8).
Governmental Purpose Ordinance. The Court is mindful that the Tribe has iterated a special obligation with regard to its own members. There are numerous expressions of these principles contained in the Governmental Purpose Ordinance (Chapter 200). Among the missions of Tribal government is “[t]o promote the social and economic welfare of the members of the Tribe.” 200(c)(1)(C). Among the roles of Tribal Government is “[t]o create and execute policies and laws that govern the Tribe and its members in the interest of self-determination, protection of lights and privileges, and the preservation of Tribal identity.” 200(c)(2)(A). The Council has also, elsewhere, expressed a desire “to attract qualified employees, particularly Tribal members, to the Tribal work force.” Chapter 370(b).
Employment Action Review Ordinance. The Employment Action Review Ordinance states that Spirit Mountain Gaming, Inc. is an agency and instrumentality of the Tribe. 255.5(a)(2). Furthermore, the Ordinance provides that employees of Spirit Mountain Casino are employees of the Tribe. 255.5(a)(3) In addition, the Ordinance provides that employment opportunities provided by the Confederated Tribes of the Grand Ronde Community, including agencies and instrumentalities of the Tribe, promote the health, safety, welfare and economic security for employees of the Tribe and their families. 255.5(a)(1)
Tribal Human Resources Guidebook and Employee Handbook. In contrast to employees in their introductory period, who may be fired “at any time and for any reason,” “regular employees who have completed their Introductory Period may be involuntarily terminated for any reason determined the Tribe to be consistent with the due process provision of the Tribal Constitution.” Human Resources Guidebook and Employee Handbook (Emphasis added). Moreover, both the IRB review process and the provisions allowing judicial review indicate that a property interest has been created in the continued employment of “regular” Tribal employees.
Personnel Management Ordinance. The Personnel Management Ordinance (Chapter 370), which authorized the development of an IRB process used in this case, states that the purpose of the Ordinance “is to establish uniform policies to assure a high quality work force, ensure the protection of employee rights, and set forth the expectations of all employees and managers in conducting employee relations matters.” 370(a)(2). The Ordinance further states that “[tjhese policies should ensure that both the interests of the Tribe *119 and the employees are protected, and an environment exists where employees can enjoy their work, feel secure in their positions, and make a positive contribution towards the goals of the Tribe.” 370(b).
Petitioner’s protected property interest in continued employment requires due process. Because such a property interest has been created, its termination requires compliance with due process protections.
This Court has recently discussed due process concepts, including the right to adequate notice. In the Matter of Reyn Leno, Case No. C-99-10-001, 2 Am.Tribal Law 89 (May 12, 2000). In Lena, the Court noted that the essence of due process is that the notice and hearing must provide the opportunity to be heard at a “meaningful time and a meaningful manner'.” Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The Court also cited Barnes v. Healy, 980 F.2d 572, 579 (9th Cir.1992) for the proposition that “[d]ue process only requires notice that gives sufficient detail to allow an opposing party to prepare his defense.” Notice is “meaningful” when it provides a recipient an explanation of what will be covered at the hearing. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).
Due process requires constitutionally sufficient notice, which Petitioner did not receive. Although due process is a flexible concept, “[a]n essential principle of due process is that a deprivation of life, liberty, or property ‘be preceded by notice and an opportunity for hearing appropriate to the nature of the case.’ ” Loudermill, 470 U.S. at 542, 105 S.Ct. 1487, quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Further:
Adequate notice is integral to the due process right to a fair- hearing, for' the “right to be heard has little reality or worth unless one is informed.” Mullane, 339 U.S. at 314, 70 S.Ct. 652. Adequate notice is that which is “reasonably calculated, under all the circumstances, to apprise interested parties of the pen-dency of the action and afford them an opportunity to present their' objections”.
Bliek, 102 F.3d at 1475. In considering the adequacy of notice, one factor' that a court may consider is the legal sophistication and experience of those who receive the notice, as well as whether' the recipient is apt to be represented by legal counsel. Id. at 1476.
Here, the notice that petitioner received was not adequate to satisfy those requirements. The written notice that petitioner received in the “employee counseling form” described only the final event that led to her termination. Although the form listed a number' of descriptors applied to the “nature of [the] counseling,” including “attendance,” “insubordination,” “failure to follow instructions,” “improper conduct,” and “violation of company rules,” all of those descriptor's might apply to the events of January 8, 2000, that resulted in petitioner’s termination. In sum, that notice was not “reasonably calculated, under all the circumstances, to apprise” petitioner of the reasons for her firing and the issues that would be raised before the IRB. That is particularly true given that petitioner was not represented by counsel and that she appears not to be sophisticated in legal matters.
Perhaps recognizing the flaws in the written notice provided, the Casino argues that petitioner was assigned a “coach” who prepared her for the hearing by telling her, in advance of the IRB hearing, that “Casino management was free to address anything in her employment history at the *120 Internal Review Hearing.” There is nothing in the record, however, to support that assertion and, on review, the court may not look outside that record.
The Casino also contends that petitioner was given notice at the IRB hearing that her entire employment record would be subject to review. However, notice given at a hearing is insufficient. “The right to be heard has little reality or worth unless one is informed” and given “an opportunity to present their objections.” Bliek, 102 F.3d at 1475 (internal quotation marks omitted). That right is rendered essentially meaningless if notice and the opportunity to present one’s objections occur at the same time. Moreover, it is apparent that petitioner, who was excluded from the hearing while management put on its case, did not understand that the issues to be considered at the hearing were broader than she thought. In sum, the notice provided to petitioner was not constitutionally sufficient.
It may be argued that the sum total of what Ms. Baker did get should have been sufficient notice. This Court knows of no authority which treats due process with a “should have known” test. Even if there were such authority, this Court would decline to adopt it. While due process is a flexible concept depending on the particular situation, as was noted in Lena, nevertheless, the notice itself is either sufficient or it is not. Further, the Supreme Court, has recognized that certain contexts require greater care and clarity, pointedly in public entitlement cases, where recipients cannot usually afford legal counsel. In such cases notice must be “complete [and] stated in plain language.” See Bliek v. Palmer, 102 F.3d 1472, 1477-8 (8th Cir. 1997), citing Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) and Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
Approaching this issue from a slightly different perspective leads to the same result. Under the familiar three-part test laid out in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in evaluating a due process claim this Court should consider:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and agency burdens that additional or substitute procedural requirements would entail.
Applying that test here leads inexorably to the conclusion that petitioner did not receive constitutionally adequate notice. Her private interest is a significant one, that is, her interest in her employment and income. Adequate notice is “integral to the due process right to a fair hearing” precisely because the right to a hearing is worth little absent the right to be informed and because adequate notice serves to protect the “opportunity to present [one’s] objections.” Bliek, 102 F.3d at 1475, quoting Mullane, 339 U.S. at 314, 70 S.Ct. 652. In contrast, requiring the Casino to provide constitutionally adequate notice will result in little, if any, burden to the Tribe or its agencies and instrumentalities. Thus, applying the Mathews test also leads to the conclusion that the Casino did not give petitioner constitutionally sufficient notice of the reasons for her termination and of the factual issues that she would confront at the IRB hearing.
CONCLUSION:
The Court concludes that the notice petitioner received was constitutionally inad *121 equate and that she was therefore deprived of constitutional due process
IT IS THEREBY ORDERED:
The case is remanded to the Internal Review Board for further proceedings not inconsistent with this opinion.

. Petitioner does not agree that she was told to return by 12:15 p.m. She also disputes the Casino's characterization of her behavior after she returned. Assuming, without deciding, that the Court has any judicial authority to do so, the Court need not and does not resolve these factual disputes.

. For example, petitioner told the Board: "Okay, the accusations presented to me regarding the final incident are not true, and also I wanted to ask you to keep in mind that the final incident is what we have a discrepancy over, and that was taking the 15 minutes longer, 20 minutes longer, whatever, not any *117 trouble I had been in before or my attitude, or anything like that].]”