ORDER AFFIRMING FINAL EMPLOYMENT DECISION
KATHARINE ENGLISH, Chief Judge.
ISSUE PRESENTED:
Petitioner seeks judicial review of the Final Employment Decision terminating her employment with the Tribe on April 28, 2000. Petitioner first sought review of that decision before an Internal Review Board (IRB), which upheld the decision on June 30, 2000. Before this Court, Petitioner claims that the decision to terminate her employment violated Tribal policy, federal law (specifically, the Family Medical Leave Act), and that the IRB hearing deprived her of due process. Pursuant to the Employment Action Review Ordinance, Section 255.5(d)(8), this Court may remand or reverse a Final Employment Decision only if it is arbitrary and capricious, is an abuse of discretion, or if the employee’s rights have been violated under the Tribal or United States Constitutions or under other Tribal or federal law. Review is on the record made before the IRB. Section 255.5(d)(7). For the reasons that follow, the Court rejects Petitioner’s claims and affirms in this case.
BACKGROUND:
Petitioner worked for the Tribe from October 27, 1998, until her termination on April 28, 2000. She was hired to serve as an instructional aide and tutor for primary grade students. Almost from the beginning, Petitioner’s employment record was marred by problems. An employment evaluation of her work from October 27, 1998 — when she began her work with the Tribe — until April 27, 1999, noted that, by her own admission, she was often late for work and that her attendance record also was unsatisfactory. Her supervisor reported that she “really needs to work on her attendance and unplanned absences. If they continue at the current rate, it will lead to discipline.”
Despite that early warning, Petitioner’s problems continued. On July 27, 1999, she received her first “verbal” warning. The memorandum documenting that verbal warning, which was sent to Petitioner, again cited her “continued unplanned absences.” Petitioner was informed that the verbal warning was the first step in the disciplinary process. She was told that “[a]ny future occurrence, including unplanned tardiness, absence or early departure will lead to further steps in the disciplinary process.”
On February 28, 2000, Petitioner received another warning regarding her still continuing unplanned absences. She was again cautioned that future unplanned absences, tardiness or early departures would lead to further steps in the disciplinary process. On that date, she also received a disciplinary notice, citing violations of the attendance policy.
On March 17, 2000, Petitioner’s supervisor, met with Petitioner to discuss “attendance and performance issues.” Petitioner was often late or absent. The tutoring forms Petitioner submitted were incomplete. The culture class, which she was to coordinate and conduct, was so “inconsistent/non-existent” that school staff “were no longer able to predict when to send children or not to send children.” Petitioner also had “sidetracked” during a school field trip to accommodate a personal errand. During the meeting with her supervisor, *31 Petitioner demonstrated very defiant behavior, inappropriate use of language and lack of a real concept about responsibility/accountability as it relate[d] to her” job.
Another meeting was held with Petitioner on April 4, 2000. Petitioner still had too many unplanned absences, although her tardiness had improved somewhat. Some other improvement also was noted in her tutoring forms and culture class lesson plans, but problems remained.
On April 7, 2000, Petitioner received a disciplinary notice. Despite an earlier verbal warning given to her on March 17, 2000, she continued to bring a child to the Before and After Care Program who was not enrolled in that program.
Petitioner’s problems continued. On April 24, 2000, she again met with supervisors. Her unplanned absences continued. She reported that she was “stressed out.” Teachers who had reviewed her tutoring forms indicated that they had not provided the signatures that were on the forms and which purportedly were theirs. One culture-class lesson form was late and another had not been submitted at all. Petitioner said that “she didn’t feel it was necessary to hold culture class if she didn’t feel like it and would cancel the class at her own will.” Petitioner was then suspended from her job for a week.
On April 28, 2000, Petitioner was finally terminated “for violation of Tribal policies.”
STANDARD OF REVIEW:
Pursuant to the Employment Action Review Ordinance, this Court must limit and base its review on “the record,” as submitted by the parties. Tribal Code 255.5(d)(7). In this case, the record is comprised of seventeen exhibits and a transcript of the IRB hearing.
Under Section 255.5(d)(8), the Court may remand or reverse a Final Employment Decision if it is arbitrary and capricious; or an abuse of discretion; or if the employee’s rights have been violated under the Tribal Constitution or other Tribal or Federal law.
ANALYSIS:
Tribal policy has not been violated. Petitioner’s initial claim is that her firing violated Tribal policy because the Tribe’s Employee Handbook states that the “purpose of performance improvement or disciplinary action is to improve the employee’s performance or behavior to a sustained acceptable level.” Petitioner admits that her job performance was “less than perfect,” but she contends that she was not given enough warning of her performance problems sufficiently in advance of her termination to allow her to improve and she argues that she should have been given an opportunity for additional training before she was fired.
It may be doubtful whether those claims, even if well taken, fit within the Court’s limited scope of review. In any event, assuming, without deciding, that these claims are properly reviewable here, the claims are not persuasive. As noted above, Petitioner received many verbal and written warnings during her employment with the Tribe. She was given abundant notice of her failures as an employee and ample opportunity to correct them. Petitioner does not explain -what training would be required for an employee who is often late or absent, and nothing in the “purpose” section of the Employee Handbook, on which Petitioner relies, makes the provision of training a prerequisite to employee discipline, including termination of employment. The Court rejects these claims.
The Family Medical Leave Act has not been violated. Petitioner’s next *32 claim is that her firing violated federal law, specifically the Family Medical Leave Act (FMLA), 29 USC section 2601. Petitioner admits that, to prevail on a FMLA claim, she must prove that there was a causal connection between an activity protected under the Act and the adverse employment action, see Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir.1998), but asserts, somewhat tepidly, that she has carried that burden here because the sequence of events “gives rise to the inference that [she] was terminated at least in part as a result of her request for FMLA leave.” The Tribe questions whether the FMLA applies to it, but argues that, even if it does, Petitioner’s termination did not violate the Act because the Tribe had legitimate non-FMLA reasons for firing her. The Tribe notes that filing for FMLA leave does not insulate Petitioner from all adverse employment actions.
The Court agrees. Assuming, without deciding, that the Act applies to the Tribe, the Tribe nonetheless was “entitled to dismiss [Petitioner] for any lawful reason at any time, whether before, during, or after [she] requested] or t[ook] leave pursuant to FMLA, as long as the [Tribe] d[id] not discriminate or retaliate against [her] for requesting and taking such leave.” Serio v. Jojo’s Bakery Restaurant, 102 F.Supp.2d 1044, 1050 (S.D.Ind.2Q00). Here, Petitioner did not request FMLA leave until April 6, 2000, long after her problems as an employee and the course of disciplinary action against her had begun. In addition, when she was granted leave, it was only for doctor’s appointments on Wednesdays. Petitioner’s problems with absences extend far beyond Wednesdays in April 2000. In sum, the Tribe had lawful reasons to terminate Petitioner’s employment and Petitioner’s request for FMLA leave did not cancel those lawful reasons for her termination.
It follows that Petitioner also has failed to prove any causal connection between her FMLA request and her firing. The Tribe disciplined Petitioner before she submitted her FMLA request and most of her problems as an employee antedate that request. In sum, the Court rejects Petitioner’s FMLA claim.
Petitioner’s due process rights were not violated. The Court now turns to Petitioner’s due process elaims. She asserts that she was deprived of due process because the notice she received was inadequate, because at the IRB hearing she was not allowed to argue her FMLA-based claim, and because the decisionmaker at that hearing allegedly was not impartial. The Tribe does not argue that due process does not apply here, but the Tribe contends that the process Petitioner received was constitutionally adequate. The Court agrees.
Due process only requires notice that gives sufficient detail to allow an opposing party to prepare a defense. In the Matter of Reyn Leno, Case no. C-99-10-001, opinion at 11, citing Barnes v. Healy, 980 F.2d 572, 579 (9th Cir.1992). Here, Petitioner argues that she received inadequate notice because the final personnel action notice stated only that she was being terminated for “violation of tribal policy.” Petitioner, however, had been given other, more-specific warnings about her problems as an employee. It is apparent from the grievance she filed with the IRB and from her presentation at the IRB hearing that she understood why she was being fired and what the issues were. In this situation, Petitioner received constitutionally adequate notice.
Petitioner’s claim that she was deprived of due process because she was not allowed to raise the FMLA issue at the IRB hearing is based on a comment that the facilitator made near the outset of that *33 hearing. The facilitator suggested that the hearing was not the proper forum in which “to discuss anything about the FMLA,” although the subject of Petitioner’s termination could be discussed. As the Tribe suggests, this comment is somewhat ambiguous. It is not clear whether the facilitator meant to preclude the subject of the FMLA entirely or whether he simply meant that an FMLA claim per se could not be litigated before the IRB. In any event, Petitioner did bring up the FMLA at the hearing and she has not suggested what else she would have said had the facilitator not made his comment. In this situation, absent any evidence that the facilitator’s comment had any real impact on the course of the hearing, the Court finds no due process violation that warrants reversal or remand to the IRB.
Petitioner’s final due process claim is that she was deprived of a neutral deci-sionmaker at the IRB hearing because the facilitator allegedly told the panel, before the hearing began, that Petitioner was “going to say things like ‘FMLA’ and federal law and that is not why we are here. We are here because she was terminated and that was the right thing to do.” The source for that quote is an affidavit that the Court has already ruled is outside of the scope of the record in this case. Nothing in the record supports the claim. In any event, the facilitator was not the deci-sionmaker in this case. The record does not indicate that the members of the IRB panel were biased or had decided Petitioner’s case in advance of the hearing. In sum, the Court rejects all of Petitioner’s due process claims.
IT IS HEREBY ORDERED:
The decision of the IRB and the Final Employment Decision are affirmed.