[No. C021883. Third Dist. Aug. 26, 1997.]

ROBERTA CAMPOS, Plaintiff and Appellant, v.
ELOISE ANDERSON, as Director, etc., et al., Defendants and
Respondents.

**COUNSEL**

Tom Weathered, Mary M. Marstin and Brian Paddock for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Charlton G. Holland III, Assistant Attorney General, Dennis Eckhart and Thomas R. Yanger, Deputy Attorneys General, for Defendants and Respondents.

Phillip J. Cline, District Attorney, Gary H. Evans and John S. Higgins, Jr., Deputy District Attorneys, as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**RAYE, J.**—Plaintiff Roberta Campos requested assistance from the Family Support Division of the Contra Costa County District Attorney's Office (FSD) to collect overdue child support. Dissatisfied with the FSD's response, Campos contacted defendants Eloise Anderson and the California Department of Social Services (Department) to request an administrative hearing. An administrative law judge (ALJ) ruled the Department's administrative hearing jurisdiction does not extend to review of the FSD. Campos brought a writ of mandate seeking an order compelling the Department to vacate the ALJ's order and to grant her a hearing pursuant to Welfare and Institutions Code section 10950.[1] The trial court denied the petition. On appeal, Campos asks us to determine whether the Department has jurisdiction under section 10950 to conduct a state administrative hearing into the adequacy of the FSD's provision of child support enforcement services. The Department and the California District Attorneys' Association, which has filed an amicus curiae brief, argue section 10950 confers no such authority. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Campos requested FSD to pursue child support collection against her former husband because he was failing to pay child support for their son. Eventually Campos became dissatisfied with the actions, or inaction, of FSD and contacted the Department to request an administrative hearing. Following oral and written argument, the ALJ concluded the Department had no jurisdiction to convene the requested hearing.

Campos filed the present action seeking: (1) a writ of administrative mandate overturning the decision of the ALJ (Code Civ. Proc., § 1094.5), and (2) an ordinary writ of mandate directing Department to provide administrative hearings to Campos and to all persons situated similarly to Campos who might request such hearings. (Code Civ. Proc., § 1085.) Following a hearing, the trial court entered a judgment denying the petition. The court found the FSD is not "the county department" and child support enforcement services provided by FSD are not "public social services" as those phrases are used in section 10950.

---

[1]All further references are to the Welfare and Institutions Code unless otherwise indicated.

Campos filed a motion to vacate judgment; the court denied the motion. Following entry of judgment, Campos filed a timely notice of appeal.

DISCUSSION

I

Child support enforcement services are tied to the federal Aid to Families with Dependent Children (AFDC) program. Title IV of the federal Social Security Act establishes the AFDC program which provides states with federal funds to aid needy families with dependent children. (42 U.S.C. § 601.) To offset the costs of the program, each AFDC applicant must assign to the state any rights to child support accruing to the applicant. (42 U.S.C. § 602(a)(26)(A).) State-collected child support is retained by the state as reimbursement for AFDC benefits conveyed. (42 U.S.C. §§ 602(26)(A), 657.) Title IV also requires participating states to establish and enforce child support obligations owed by absent parents to their children. States are required to provide child support enforcement services whether or not the beneficiaries of these services are receiving AFDC benefits. (42 U.S.C. § 651.)

Section 11475 et seq. sets forth California's implementation of title IV. Section 11475.1, subdivision (a) states that the district attorneys "shall have the responsibility for promptly and effectively establishing, modifying, and enforcing child support . . . orders . . . [whether or not] the child is receiving public assistance."

II

■■■ Campos and the Department disagree over the correct interpretation of section 10950, which states in pertinent part: "If any applicant for or recipient of public social services is dissatisfied with any action of the *county department* relating to his or her application for or receipt of *public social services* . . . he or she shall . . . upon filing a request with the State Department of Social Services . . . be accorded an opportunity for a state hearing." (Italics added.) Campos argues the Welfare and Institutions Code defines public social services "broadly." The Department contends the statutory scheme of the Welfare and Institutions Code does not give it jurisdiction to convene hearings concerning a district attorney's child support enforcement efforts. The Department concentrates on two key phrases in section 10950: "public social services" and "county department," arguing child support enforcement services are not public social services, and FSD is not a county department. We examine each phrase in turn.

## A.  *Public Social Services*

Section 10051 states: " 'Public social services' means those activities and functions of state and local government administered or supervised by the department or the State Department of Health Services and involved in providing aid or services or both . . . to those people of the state who, because of their economic circumstances or social condition, are in need thereof and may benefit thereby."

Section 10052 defines "aid" as "financial assistance provided to or in behalf of needy persons under the terms of this division, including direct money payments and vendor payments." The Department argues FSD provides parents with child support enforcement services, *not* financial assistance. We agree. FSD's activities do not constitute "aid" as defined by section 10052. Any payments recovered by FSD are not provided by the FSD but by the errant parent.

Section 10053 defines "services" as: "those activities and functions performed by social work staff and related personnel of the department and county departments with or in behalf of individuals or families, which are directed toward the improvement of the capabilities of such individuals or families maintaining or achieving a sound family life, rehabilitation, self-care, and economic independence."

The Department argues child support services provided by the district attorney do not qualify as services under section 10053 because (1) they are not provided by social work staff and related personnel, but by attorneys, and (2) these attorneys are not "personnel of the department or county departments," but are personnel of the district attorney's office. We find the Department's argument persuasive. Section 10053 contemplates social services of a type performed by social workers, not collection services performed by legal personnel. As we discuss in greater detail, the family support division is not the "County Department" referred to in section 10053. The child support enforcement services offered by a district attorney are not "public social services" as the phrase is used in section 10950. To qualify as a public social service a state or local government function must constitute either "aid" or "services." Child support enforcement services provided by a district attorney are neither.

## B.  *"County Department"*

Section 10058 defines the term "county department" as: " 'County department' means the county agency designated by the board of supervisors, or by

such other authority as may be provided in the county charter, as responsible for the administration of public social services." At trial, the Department submitted a declaration by Andrea Cassidy stating the agency designated in Contra Costa County as responsible for public social services is *not* the district attorney, but the county social services department.

As the Department points out, other sections of the Welfare and Institutions Code which discuss "the county department" underscore the inappropriateness of finding the district attorney to be a county department. Section 10800 provides in pertinent part: "[T]he administration of public social services in each of the several counties of the state is hereby declared to be a county function and responsibility and therefore rests upon the boards of supervisors in the respective counties pursuant to the applicable laws, and in the case of public social services for which federal or state funds are provided, subject to the regulations of the department . . . . [¶] For the purpose of providing for and carrying out this function and responsibility, the board of supervisors of each county, or other agency as may be otherwise provided by county charter, shall establish a county department, unless otherwise provided by the county charter. Except as provided herein, the county department shall be the county agency for the administration of public social services and for the promotion of public understanding of the public social services provided under this code and the problems with which they deal."

Section 10801 provides in part: "A county director shall be appointed in each county by the board of supervisors or other agency designated by county charter . . . . The county director shall at all times be under the general direction and supervision of the board of supervisors . . . ." Section 10802 further states: "The county director shall, for and in behalf of the board of supervisors, have full charge of the county department and the responsibility for administering and enforcing the provisions of this code pertaining to public social services under the regulations of the department . . . ."

These sections reveal that the Legislature intended each county to establish one county entity, supervised by one county director to be the county department with authority over public social services.

## III

Faced with these unhelpful definitions, Campos argues section 10051 "has consistently been interpreted as broadly inclusive of all federal-state cooperative benefit and service programs." In support, Campos cites language in

*League of United Latin American Citizens* v. *Wilson* (C.D.Cal. 1995) 908 F.Supp. 755. *Wilson* addressed the constitutionality of Proposition 187, an initiative passed by California voters to "prevent illegal aliens . . . from receiving benefits or public services." (*Wilson, supra,* at pp. 763, 767.) Section 5 of the initiative added section 10001.5 to the Welfare and Institutions Code.[2]

The plaintiffs in *Wilson* argued Proposition 187 conflicted with federal law. The court considered section 5 of the initiative and stated: "The remaining benefits denial provision of section 5 provides that 'any public entity' shall not provide benefits or services to persons determined to be 'alien[s] in the United States in violation of federal law.' § 5(c)(1). By its plain language, section 5 applies to 'any public entity' in the state of California and covers 'public social services' or 'benefits and services' administered by those entities. [Citation.] *'Public social services' is broadly defined under California law to include*: 'those activities and functions of state and local government administered or supervised by the department [of Social Services] or the State Department of Health Services and involved in providing aid or services or both . . . to those people of the state who, because of their economic circumstances or social condition, are in need thereof and may benefit thereby.' Cal.Welf. & Inst.Code, § 10051. The Court concludes that section 5 broadly denies any and all aid, services and programs administered or supervised by the state departments of social and health services to persons without lawful immigration status under federal law. Accordingly, to the extent that section 5 would deny public social services to persons entitled to receive them under federal law, section 5 conflicts with federal law." (*League of United Latin American Citizens* v. *Wilson, supra,* 908 F.Supp. at p. 780, italics added.)

[2]*Section 10001.5 states:* "(a) In order to carry out the intention of the People of California that only citizens of the United States and aliens lawfully admitted to the United States may receive the benefits of public social services and to ensure that all persons employed in the providing of those services shall diligently protect public funds from misuse, the provisions of this section are adopted. [¶] (b) A person shall not receive any public social services to which he or she may be otherwise entitled until the legal status of that person has been verified as one of the following: [¶] (1) A citizen of the United States. [¶] (2) An alien lawfully admitted as a permanent resident. [¶] (3) An alien lawfully admitted for a temporary period of time. [¶] (c) If any public entity in this state to whom a person has applied for public social services determines or reasonably suspects, based upon the information provided to it, that the person is an alien in the United States in violation of federal law, the following procedures shall be followed by the public entity: [¶] (1) The entity shall not provide the person with benefits or services. [¶] (2) The entity shall, in writing, notify the person of his or her apparent illegal immigration status, and that the person must either obtain legal status or leave the United States. [¶] (3) The entity shall also notify the State Director of Social Services, the Attorney General of California, and the United States Immigration and Naturalization Service of the apparent illegal status, and shall provide any additional information that may be requested by any other public entity."

Campos reads the court's decision in *Wilson* as finding section 10950 includes all federal-state cooperative benefit and service programs. However, the court in *Wilson* found the language of section 5 of Proposition 187 included these programs in referencing "public social services" and "benefits and services" administered by these entities. The court had no occasion to consider whether section 10950 includes all federal-state benefit and service programs.

## IV

Campos raises several other challenges to the trial court's interpretation of section 10950. Campos stresses the "interrelated nature" of AFDC and child support enforcement services. According to Campos, both AFDC and child support enforcement are similarly designed and administered. Therefore, Campos argues, "The interrelated nature of the programs, the administrative and regulatory similarities, and the identical basic purpose, to provide for needy families with children, all show that CSES, like AFDC, is a public social service."

Regardless of the similarities between the two programs, our task is to determine whether child support services comprise public social services under section 10950. ■ A court's primary task in construing a statute is to determine the Legislature's intent. The statutory language is the best indication of legislative intent. If the Legislature has provided an express definition, a court must take it as it is found. It is a cardinal rule that courts may not insert words or add provisions to a statute. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) ■ The statutory definitions of sections 10051 and 10058 control, not any perceived similarities between programs.

Campos also claims the purpose of section 10950 is to provide constitutionally mandated procedural due process. According to Campos, section 10950 should be interpreted to accomplish, not defeat, that purpose. Campos argues the court in *Barnes* v. *Healy* (9th Cir. 1992) 980 F.2d 572, specifically held that child support services are a statutory entitlement to which due process rights attach, and that due process must be provided to both AFDC and non-AFDC parents.

In *Barnes* v. *Healy, supra,* 980 F.2d 572, custodial parents participating in the Department's child support enforcement program brought a class action suit alleging the Department's notice of child support collections and distributions failed to satisfy due process requirements. (*Id.* at p. 572.) The federal AFDC statute requires annual notice to former and current AFDC recipients

of the amount of support collected by the state, however no notice is statutorily required for non-AFDC families. (*Id.* at p. 575; 42 U.S.C. § 654(5).) Although the trial court found non-AFDC families had established they were entitled to meaningful notice, the trial court held procedural due process required notice only to AFDC families and not to non-AFDC families who receive the same enforcement services. (980 F.2d at p. 576.) The Ninth Circuit disagreed, finding the entire class entitled to meaningful notice. (*Id.* at pp. 578-580.) The court in *Barnes* did not consider the due process requirement of a fair hearing, nor did the court make any sweeping pronouncements regarding any other aspect of due process.

Campos asserts the trial court erred in stating, in its oral statement of decision, that section 10950's failure to specifically mention child support services indicated that jurisdiction under the statute did not extend to those services. According to Campos, the trial court's finding conflicts with *Knight v. McMahon* (1994) 26 Cal.App.4th 747 [31 Cal.Rptr.2d 832].

We find Campos misreads both the court's comments and *Knight.* The court in its oral statement of decision did not consider the presence or absence of child enforcement in section 10950 determinative. Instead, the court focused on whether the phrase "public social services" in section 10950 could be construed to include child enforcement services.

The court in *Knight v. McMahon, supra,* 26 Cal.App.4th 747, held that once jurisdiction is conveyed to the Department under section 10950 to hold a hearing: "The only limitation upon issues, factual or legal, which may be raised at such hearings is that they must be reasonably related to the request for hearing or other issues mutually agreed upon by either party . . . ." (*Id.* at p. 755.) *Knight* does not expand the jurisdiction of the Department to hold hearings, *Knight* simply explains the scope of the hearings mandated by section 10950. Moreover, the Supreme Court recently disapproved *Knight* in *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1023 [56 Cal.Rptr.2d 109, 920 P.2d 1314].

As the Department points out, jurisdiction to hold a hearing must be conveyed expressly and unequivocally. (*Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 258 [284 Cal.Rptr. 718, 814 P.2d 704]; *McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 372 [261 Cal.Rptr. 318, 777 P.2d 91].) Section 10950 does not expressly and unequivocally grant the Department jurisdiction to hold a hearing concerning child support enforcement services.

Finally, Campos argues the trial court erred in basing its decision on the district attorney's elected status and prosecutorial discretion. Campos accuses the trial court of using the district attorney's status as an elected official to insulate the district attorney from "the requirements of the law."

Again, Campos mischaracterizes the trial court's comments. In its oral statement of decision the court noted the difference between the Department and the family support division of the district attorney's office: "[T]he fact that [the family support division is] located in the District Attorney's office . . . would be a logical basis upon which the Legislature would choose to monitor the compliance of those programs with state and federal law differently than with respect to public social services. District attorneys, of course, are elected public officials whereas the directors of county welfare departments are not. And . . . a state administrator seeking to review the actions of a local district attorney's office for which the local district attorney is ultimately electorally responsible on a case-by-case basis would raise issues that are not present with respect to reviewing the actions of a county welfare director given the traditional relationship between county government and state government in which county officers in the counties themselves are viewed as agents of the state in carrying out state policy. [¶] With respect to district attorneys, the situation is a little different. And district attorneys are not typically viewed as agents of the state in carrying out state policy but as local elected officials with discretion that is, to a significant extent, not reviewable by state administrative agencies. So there is, I think, a logical basis upon which the Legislature may well have desired to monitor these programs differently than the state monitored public social service programs, and the statutes that Mr. Yanger refers to evidence that distinction."

In her motion to vacate the judgment, Campos argued the trial court "disregards the well established proposition that counties and county officials, whether elected or appointed, must do as the state directs." During the hearing on the motion the court responded to this comment: "[W]ith regard to the issue of the District Attorney's discretion, I think . . . petitioners may misunderstand the . . . Court's comments on that subject. I don't dispute that in performing his or her child support collection activities, a district attorney is bound by applicable federal and state . . . law and has to perform those responsibilities in accord with that law. And where . . . an elected public official—whether it's a member of the Board of Supervisors or a district attorney, has ministerial duties under the law including under expressed court orders, they obviously have to follow the law and obey the court orders. But that doesn't prove that a particular elected official, in fact, has such duty as opposed to having discretion. [¶] And the question is whether or not a district attorney has the discretion in the manner in which he or she prosecutes child support enforcement cases or whether that discretion is regulated by an administrative appeal process in which the State Department of Social Services oversees and regulates, in some manner, the way in which the District Attorney exercises his or her discretion. There . . . isn't any statute here which evidences a legislative intent that the State

Department of Social Services look over the shoulder of district attorneys around the state with regard to the manner in which they are exercising discretion."

Contrary to Campos's renewed claims on appeal, the trial court did not find that district attorneys are not bound by "the requirements of the law." The trial court observed the differences between district attorneys and the directors of county welfare departments, and noted these differences formed a logical basis for the Legislature's decision to treat the two entities differently. Nor did the court hold that the discretionary powers of district attorneys exempt them from the hearing provisions of section 10950. The court merely noted that the fundamental question before it was whether district attorneys were "regulated" by the hearing process mandated by section 10950, or whether section 10950 did not apply, leaving district attorneys discretion "in the manner in which he or she prosecutes child support enforcement cases."

We find the trial court did not err in holding child enforcement services provided by the district attorney's office do not fall within the hearing provisions of section 10950.[3] The Court of Appeal in *Pereira-Goodman* v. *Anderson* (1997) 54 Cal.App.4th 864 [63 Cal.Rptr.2d 197] recently reached the same conclusion.

DISPOSITION

The judgment is affirmed. Department shall recover costs on appeal.

Sims, Acting P. J., and Sparks, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1997.

---

[3]In her reply brief, Campos for the first time argues the Department's current interpretation of section 10950 conflicts with the Department's prior policy statements, the legislative history of AFDC and prior pronouncements by the Attorney General. Points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. To withhold a point until the closing brief deprives the respondent of the opportunity to answer it or requires the effort and delay of an additional brief by permission. (*Sacramento Cable Television* v. *City of Sacramento* (1991) 234 Cal.App.3d 232, 244 [286 Cal.Rptr. 470].) We find Campos's labeling of these arguments as "rebuttal" disingenuous and not sufficient to establish good reason for her delay in raising these issues.

*Retired Associate Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.