Filed 6/28/13  Slagle v. Aragon CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JULIE A. SLAGLE, | |
| Respondent, | C066572 |
| v. | (Super. Ct. No. 98FL04770) |
| DAVID LEE ARAGON, | |
| Appellant. | |

David Lee Aragon (father) appeals from an order granting Julie A. Slagle (mother) sole legal and physical custody of the parties' minor child.  Father has filed a 50-page opening brief from which we discern father has numerous complaints regarding the process by which the trial court modified custody of the parties' minor child.  We conclude several of his claims are not timely and many are forfeited.  The remaining claims fail because there is no error or no prejudicial error.

Father has elected to proceed on a clerk's transcript.  (Cal. Rules of Court, rule 8.121.)  Thus, the appellate record does not include a reporter's transcript of the hearing

1

in this matter. This is referred to as a "judgment roll" appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082-1083; *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.) On the face of this record, we affirm the trial court's order.

FACTUAL AND PROCEDURAL SUMMARY[1]

In April 1999, judgment was entered establishing the parent-child relationship between father and the minor child (born in 1998). Litigation regarding custody of the child ensued; litigation that included allegations of physical and sexual abuse, neglect, and contempt of court. Before the child was eight years old, three different mediation reports had been issued by three different mediators (including family court services), the court had ordered an Evidence Code section 730 custody evaluation (custody evaluation) be completed by Herbert N. Weissman, Ph.D., and the court had appointed a special master (Larry Nicholas, Ph.D.).

In January 2005, the parties (both represented by counsel) agreed that Lisa Perrine, Ph.D., would conduct a "limited" custody evaluation that would address only two issues: (1) allegations of mother physically abusing the minor; and (2) allegations of father "coaching" the minor. Dr. Perrine produced her limited Evidence Code section 730 report (section 730 report) in April 2007 (the April 2007 report).

On April 17, 2007, the trial court adopted the recommendations of Dr. Perrine as an interim custody order and on June 15, 2007, the parties (both represented by counsel) agreed Dr. Perrine would be appointed to do a "complete" custody evaluation.

On October 30, 2007, a stipulated judgment was entered wherein the trial court adopted Dr. Perrine's April 2007 report. The court also continued the prior order that the

---

[1] We do not consider any of father's "facts" that are not supported by the record.

child participate in counseling and ordered Dr. Perrine to conduct a full custody evaluation, including a parenting plan.

In a stipulation and order dated September 17, 2008, the parties re-affirmed Dr. Perrine's appointment to perform a custody evaluation. The parties also agreed to, and the court ordered, further psychological testing of the child as part of that evaluation.

In October 2009, Dr. Perrine issued another section 730 report, including recommendations for custody and visitation (the October 2009 report). Based on her evaluation of the parties, Dr. Perrine recommended mother have sole legal and physical custody of the child and father's visitation be limited to "Level III professional on-site therapeutic supervised visitation no more than once per month for a maximum of two hours each."

On October 13, 2009, Dr. Perrine sent the October 2009 report directly to the court with a letter expressing her concern that father may kidnap the minor when he read the recommendation to drastically reduce his parenting time. As noted in the October 2009 report, the minor's therapist shared the same concern. Accordingly, the court scheduled a "special set" hearing for October 20, 2009, to consider Dr. Perrine's recommendations.

At the "special set" hearing on October 20, 2009, the parties were provided a copy of the October 2009 report and given an opportunity to review the report (father was not represented by counsel). The court heard from mother and father, allowing both to state their positions. The court then adopted Dr. Perrine's recommendation for custody and visitation as an "interim" court order.[2]

At the same hearing, father noted his intent to file a Code of Civil Procedure section 170.1 motion (section 170.1 motion) to disqualify the court. That motion was

---

[2] Contrary to father's assertion, his parental rights were not terminated at this hearing.

3

denied in January 2010. Shortly thereafter, father filed another section 170.1 motion to disqualify the court; the court ordered that motion stricken as "repetitive."

In April 2010, father filed two motions regarding custody of the minor child. In one motion, father sought "removal of the Evidence Code section 730 evaluation," in which he argued, "[p]sychology as a 'science' is no more a science than reading tea leaves or psychic mind reading." He also objected to "the involvement of a psychologist/psychiatrist as the history and basis of psychology is founded on illicit drug use and abuse . . . ; metaphysical, 'witchdoctor-ish', freakish beliefs . . . ; child sexual abuse and child RAPE with babies as young as 3 months and little children."

In his second motion, father sought, among other things, "an injunction stopping any transfer of my child's custody and I be granted permanent full custody 'In the Best Interests' of my child; and any and all child support plus interest be paid back to me in full." In support of his motion father identified mother as "an incompetent feme sole . . . a White female adult with unclean hands," and made numerous claims regarding his rights as a father.

Among his numerous claims, father argued, "my child [is] a right of property and I have the right and perfect right to defend under the Constitution of California." "As my child is a vested property right under law, I cannot be divested from them [*sic*] without first substantive payment **_before_** the unlawful takings by aid [*sic*] petitioner and their surrogate courts." "I am factually vested with rights to control my own child against that erroneous decision of Mr. McBrien acting as a 'Judge' of which he receives a substantive kick back and/or remuneration for acting in direct contravention to law and upholding radical 3rd wave feminist ideology embedded within the above mentioned court(s)."

Father also claimed, "[i]t is a fact, that defendants and their surrogate courts plan on divesting me of all rights and if need be to force me into complete slavery over my children, and to not allow me any redress at law, nor any redress of grievances and they

4

intend to do this and to violate the concise rule of law, under the fraud of using my children's 'Best Interest' doctrine to disenfranchise me and enslave me."

Trial on father's motions was set for August 19 and 20, 2010. Father subsequently moved ex parte to delay the trial date so he could conduct further discovery. The trial court denied father's request, but allowed discovery to remain open up to the date of trial.

On August 13, 2010, following the mandatory settlement conference on July 29, father again moved ex parte to continue the trial. Father wanted more time to contact "schools, daycare, counselors, psychiatrists, teachers, former principle [*sic*], former teachers, former schools, former daycare, former counselors, former psychiatrists, neighbors, and anything that pertains to this case for trial." Father also wanted the court to bring the child into chambers, ask the child what her preference was for custody and visitation, and video tape the discussion. Finally, father sought to have mother's attorney charged with extortion.

The trial court denied father's motion. The court found the motion was previously made and rejected, and no new evidence had been presented. The court also rejected father's request to bring the child into chambers, finding the decision to speak to the child is solely within the purview of the trial court.

Five days later, on August 18, 2010, father filed a third ex parte motion to continue the trial date. Father said his expert witness had become ill and was unavailable for trial. The trial was scheduled to begin the following day; the court ordered the application to be reviewed then.

The parties returned to court the following day for trial. Father asked to tape record the proceedings; the court denied his request. The court also denied father's motion to continue the trial, finding father "made a belated oral motion to continue the trial because his expert allegedly was not available. [Father] offered no explanation

5

regarding why his unavailability was not known earlier and why his request was not made earlier.

"[Father] presented no evidence of any relevant testimony that the expert could offer to assist the court. The court permitted [father] to present an offer of proof regarding expert's testimony and any proffer of the relevance of the expert's testimony. [Father] offered nothing that would demonstrate any relevance of the alleged expert's testimony. In fact, [father] indicated he did not know what his 'expert' would say if called to testify." Moreover, the court found "it is clear that whatever the alleged 'expert' would have stated about the report of Dr. Perrine, given this court's understanding of the expert's lack of expertise, it would not have been competent to influence this court's decision."

The court then heard testimony from mother, father, and Dr. Perrine. The parties gave closing arguments and the matter was submitted. The court issued a written decision regarding custody and visitation on August 26, 2010 (the August 2010 custody order).

In the August 2010 custody order, the trial court adopted the October 2009 report, making Dr. Perrine's recommendations the orders of the court. Mother was given sole legal and physical custody of the child, and father's parenting time was limited to "Level III professional on-site therapeutic supervised visitation no more than once per month for a maximum of two hours each."

The court explained it was "persuaded by substantial evidence in the record," including but not limited to, nine specific "points" raised at trial. Among those nine points: (1) Dr. Perrine's report was "exhaustive"; (2) the child admitted to being "coached" by father against mother; (3) father "brought 100 counts of contempt against . . . mother," none resulted in a finding of guilt; (4) father made approximately 11 reports to Child Protective Services, none was substantiated; (5) father reported to mother's

6

employer that she "might" be using drugs as an act of "animus," not out of concern for the child; (6) father refused counseling; and (7) father had 11 lawyers litigating custody of the child (who was then 12 years old).

The trial court also noted that "the decision in this case was based upon the words and actions of . . . father and to a lesser extent the report of Dr. Perrine.

"The court strongly encourages father to accept counseling to help him consider how his words and actions have negatively affected his child and how this court desires him to become more fully involved with his child once his counseling has been effective." Father appeals from this order.

DISCUSSION

**I**

***Applicable Appellate Rules***

On appeal, we must presume the trial court's judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, we must adopt all inferences in favor of the judgment, unless the record expressly contradicts them. (See *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.)

It is the burden of the party challenging a judgment to provide an adequate record to assess claims of error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) When an appeal is "on the judgment roll" (*Allen v. Toten*, *supra*, 172 Cal.App.3d at pp. 1082-1083), we must conclusively presume evidence was presented that is sufficient to support the court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521; Cal. Rules of Court, rule 8.163.)

These restrictive rules of appellate procedure apply to father even though he is representing himself on appeal. (*Leslie v. Board of Medical Quality Assurance* (1991)

7

234 Cal.App.3d 117, 121; see also *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.)

## II

### *Father's Claims*

### A.

### *Timeliness*

To be timely, a notice of appeal must be filed within 60 days after a notice of entry of judgment is filed, or within 180 days of judgment being entered, whichever is earlier. (Cal. Rules of Court, rule 8.104(a).) Father raises numerous claims that are outside this statutory period.

Father contends the trial court failed to use mandatory court forms to appoint Dr. Weismann[3] and Dr. Perrine to conduct custody evaluations in 2003, 2005, and 2007 respectively. He further contends that in 2003, 2005, and 2007, the trial court failed to follow up with Drs. Weissman and Perrine regarding their obligation under Sacramento County Local Rules, former rule 14.16.05, to complete the evaluation within 90 days. Father raises numerous other claims regarding Dr. Perrine's April 2007 report.

Dr. Perrine's April 2007 report was adopted by the trial court on October 30, 2007, as part of a stipulated judgment (October 2007 judgment). Accordingly, any appeal of the court's interim orders regarding custody and visitation issued prior to October 30, 2007, including the appointment of special masters and section 730 evaluators, should have been raised within 60 days after the notice of entry of judgment was filed, or 180 days after the judgment was entered. (Cal. Rules of Court, rule 8.104(a).) There is no evidence in the record that father filed a timely notice of appeal

---

[3] On or about June 24, 2003, the trial court appointed Dr. Weissman to conduct a custody evaluation.

from the October 2007 judgment.  We reject these claims as untimely.  (Code Civ. Proc., § 906 [reviewing court not authorized to review any decision or order from which an appeal might have been taken].)

## B.

### *Prejudice*

We will reverse an appealable order only if the appealing party has shown prejudice, in other words it was reasonably probable a result more favorable to him or her would have been reached in the absence of error.  (*In re Marriage of Jones* (1998) 60 Cal.App.4th 685, 694; Cal. Const., art. VI, § 13 [a judgment may be set aside for procedural error only if the error resulted in a miscarriage of justice].)  Father raises numerous claims on appeal for which he fails to show such prejudice.

Father repeatedly claims the trial court failed to use "required court forms" both in appointing experts and issuing its decisions.  Father fails, however, to show how he was prejudiced by these procedural errors.

Father also claims the trial court did not "follow-up" with Dr. Perrine when she failed to produce her section 730 report within 90 days of being appointed as required by Sacramento County Local Rules, former rule 14.16.05.  Indeed, Dr. Perrine was appointed to complete a custody evaluation in June 2007, but did not produce a completed section 730 report until October 2009.  Father fails, however, to show how he was prejudiced by this procedural error.

## C.

### *Sufficiency of the Evidence*

Father contends there was insufficient evidence to support the trial court's August 2010 custody order.  Following the hearing on August 19, 2010, the court adopted the October 2009 report.  In her October 2009 report, Dr. Perrine found the child's best interests were served by giving mother sole legal and physical custody of the minor and

9

limiting the child's contact with father.  By adopting her report and recommendations, the court necessarily found such an order to be in the child's best interest.  Without a reporter's transcript of the August 19, 2010, hearing, we must conclusively presume the evidence was sufficient to sustain that finding.  (*Ehrler v. Ehrler*, *supra*, 126 Cal.App.3d at p. 154.)

## D.

### *Statement of Reasons*

On October 30, 2009, father requested a Family Code section 3082 statement of reasons regarding the trial court's decision to adopt the October 2009 report as an "interim" order.  The court refused his request stating, "A 170.1 CCP has been filed by [father] in this matter -- the case is suspended and thus the court is unable to comply with the request."  Father now contends that ruling was error, and even if it was not error, the court failed to rule on his request once the section 170.1 motion was denied.  We reject father's contention.

The court's October 20, 2009, order was adopted as an "interim" custody order.  Interim custody orders are not appealable.  (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 556-565; Code Civ. Proc., § 904.1.)  An order refusing a statement of reasons on an interim custody order also is not appealable because it too contemplates further judicial action.  (*Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 963 [where anything further in the nature of judicial action on the part of the court must be done, the order is interlocutory and not appealable].)  That further action was the August 26, 2010, order from which father now appeals.  Accordingly, an appeal from the order denying father's request for a statement of reasons is timely.  However, father's contention fails on the merits.

Code of Civil Procedure section 632 provides that a request for a statement of decision, "must be made within 10 days after the court announces a tentative decision

10

*unless the trial is concluded within one calendar day* or in less than eight hours over more than one day *in which event the request must be made prior to the submission of the matter for decision*." (Italics added.) This same statutory time frame applies to a request for a Family Code section 3082 statement of reasons. (*In re Marriage of Bauser* (1987) 190 Cal.App.3d 639, 642-643 [addressing former Civ. Code, § 4600.5, subd. (c), now Fam. Code, § 3082].)

Here, the hearing at which the court adopted Dr. Perrine's recommendations as the interim order of the court took place on October 20, 2009, and lasted only one calendar day. Accordingly, father was required to request a statement of reasons prior to submitting the matter for decision. Father waited 10 days to make his request. His request was, therefore, untimely. (Code Civ. Proc., § 632.) There was no error.

## E.

### *October 20, 2009, Special Set Hearing*

Father raises several claims related to the October 20, 2009, "special set" hearing, at which the trial court adopted the October 2009 report as an interim order. Father claims the trial court erred in setting the hearing without first finding father was a "flight risk." Father also claims he did not receive notice of the hearing, and was not given the opportunity to be heard. Father's claims lack merit.

The trial court has inherent authority to set a hearing on shortened notice. (Code Civ. Proc., § 1005, subd. (b).) Thus, the court was not required to make a finding that father was a flight risk before setting the hearing on shortened notice. Moreover, the ex parte communication from Dr. Perrine, which motivated the court to set the hearing on shortened notice, was permitted under Family Code section 216, subdivision (c)(3), as the mediator was concerned the minor's safety might be in jeopardy.

Father's claim that he did not receive notice and was denied the opportunity to be heard regarding the October 2009 report also fails. Father apparently did receive notice

11

of the hearing because he appeared at the hearing.  Indeed, as attested to by the court in its response to father's section 170.1 motion, father informed the court he was given notice of the hearing by the attorney representing him on child support issues.

Furthermore, because we do not have a reporter's transcript of the October 20, 2009, hearing, we must assume the trial court found father received sufficient notice before proceeding with the hearing.  We must also presume the court's decision is correct.  (*Ehrler v. Ehrler*, *supra*, 126 Cal.App.3d at p. 154.)  Our presumption is fortified by the trial court's later order denying father's section 170.1 motion, wherein the court found father was given sufficient opportunity to be heard at the October 20, 2009, special set hearing.

## F.

### *Discovery*

Father also contends Dr. Perrine "hindered" his attempts at discovery related to her claims that father violated the October 2009 interim order.  Father has forfeited this claim by failing to include any citations to the record or relevant legal authority in support of the claim.  (Cal. Rules of Court, rule 8.204(a)(1)(C); *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [lack of adequate citation to the record forfeits the claim of error]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1245–1246 & fn. 14 [the failure to present argument with references to the record and citation to legal authority results in a forfeiture of any assertion that could have been raised].)

## G.

### *Claims Raised in the Reply Brief*

In his reply brief, father raises several claims that were not included in his opening brief.  He claims the trial court erred in modifying custody of the minor on an ex parte basis without a prior showing of abduction.  He also claims the trial court was required "to set a law and motion hearing within 20 days of the [October 20, 2009] ex parte

12

hearing," and "trampled upon [his] constitutionally protected liberty rights to parent this child without government intrusion." In addition, father makes a vague reference to this court "summarily" denying his application for a writ, which presumably he believes was in error.

"Points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.) Father does not explain why he could not have made these contentions earlier. Thus, they are forfeited.

## H.

### *Pending Motions*

On August 2, 2012, this court granted father's motion to augment the record on appeal "as to those documents which reflect on their face that they are stamped endorsed copies of documents actually filed or lodged with the superior court in Sacramento County case No. 98FL4770." We deferred ruling on the motion to augment as to the remaining documents, and the motion for reconsideration regarding our March 2, 2012, order in which we denied, in part, father's motion to augment. We rule on those motions now.

Father's July 12, 2012, motion to augment the record is denied as to those documents attached to his motion that do not reflect on their face that they are stamped endorsed copies of the documents actually filed or lodged with the superior court in Sacramento County case No. 98FL4770.

Father's July 12, 2012, motion for reconsideration is denied, as well as his request that we strike mother's responsive brief.

### DISPOSITION

The August 26, 2010, order of the trial court is affirmed. Costs are awarded to mother. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

13

                                                           _____HOCH_____, J.

We concur:

_____NICHOLSON\_\_\_\_\_, Acting P. J.

_____MURRAY_____, J.