Filed 7/31/14  Ramirez v. Marslek CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARIA RAMIREZ,<br><br>        Respondent,<br><br>v.<br><br>ROBERT WALLACE MARSLEK,<br><br>        Appellant. | A137242<br><br>(Alameda County<br>Super. Ct. No. HF10513783) |

Robert Wallace Marslek appeals from the written findings and order after hearing made by the Alameda County Superior Court, which modified his rights regarding his daughter (daughter), who is now approximately 13 years old.  Maria Ramirez, daughter's mother, petitioned the court for changes in Marslek's custody and visitation rights after Marslek's arrest in connection with marijuana cultivation and weapons charges, which Marslek later reported were dismissed, and daughter's revelation that Marslek had roughly interrogated her about what she had said about his activities.  The court issued a temporary order that Marslek have only supervised visitations with daughter, ordered a custody evaluation report by a neutral psychologist pursuant to Evidence Code section 730 and, upon the report's completion, conducted a hearing regarding Ramirez's petition.  It admitted the report into evidence without objection and, relying heavily on it, made certain factual findings and ordered, among other things, that Marslek continue to have only supervised visits with daughter and that he, as well as Ramirez, refrain from cultivating marijuana, including for personal use.

1

Marslek argues we must reverse the court's findings and order because he did not knowingly or consensually waive his fundamental right to a trial and was denied his constitutional right to a full and fair one; the court's order allowing him only supervised visitations, as well as certain related findings, are not supported by substantial evidence; and the psychologist and the court improperly barred his legal right to medical marijuana.[1] We affirm the judgment in its entirety.

## BACKGROUND

This case involves a bitter dispute between parents of a daughter who has been caught between them. It involves numerous factual contentions, but we discuss only those relevant to resolving Marslek's appeal.

### *Ramirez's Initiation of the Dispute*

Marslek and Ramirez do not appear to have been involved romantically for many years. Prior to this action, they shared joint legal custody of daughter and followed without dispute a physical custody and visitation arrangement regarding her.

In April 2010, Ramirez, through counsel, appeared in Department 504 of the superior court that retained continuing jurisdiction over a domestic violence prevention matter between Marslek and Ramirez that occurred some years before. Ramirez sought modifications to Marslek's rights similar to those discussed further herein, but the specifics of her request are not contained in the record.

The court told Ramirez's counsel that she needed to file a paternity action in a family law department, but considered her request for a temporary order modifying Marslek's rights regarding daughter, then about 8 years old, given Marslek's recent arrest in connection with marijuana cultivation and weapons charges. Ramirez alleged Marslek

---

[1] Marslek filed his opening brief while representing himself in propria persona. he later retained counsel, who filed his reply brief. It contains new claims, contentions, and arguments without explaining why Marslek did not raise them before. Therefore, we disregard them. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 ["[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before"]; *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543 ["[p]ro. per. litigants are held to the same standards as attorneys"].)

2

had involved daughter in marijuana cultivation and allowed her to hold a weapon. The court, having determined that Marslek was no longer in possession of the marijuana or weapons, did not see any ongoing danger. It ordered that joint legal custody would continue and mother would have sole physical custody of daughter, denied mother's request that father have only supervised visitations with daughter, and indicated its temporary order should be reviewed in the family law case Ramirez intended to file.

In May 2010, Ramirez filed a petition to establish parentage and give her sole legal and physical custody of daughter. She also moved ex parte that Marslek have no visitations with daughter until parentage was established and the parties had participated in full custody mediation, or that Marslek's visitations with daughter be professionally supervised. In addition to her previous allegations about Marslek's arrest, Ramirez alleged daughter told her "Marslek is physically and mentally torturing her. [Daughter] stated Marslek interrogates her, holding her down on the ground grabbing her jaw to the point where she could not breathe. . . . [Daughter] is terrified and has no one to turn to."

Marslek, represented by counsel, denied there was any reason to modify his rights. The court, with the agreement of the parties, ordered that a custodial evaluation be conducted by a neutral psychologist. It made an interim order that Ramirez would have physical custody of daughter and Marslek would be allowed supervised visitations only.

### The Custody Evaluation

In September 2010, the court, with the parties' agreement, appointed a psychologist to conduct a custodial evaluation. As was later reported to the court, Marslek soon thereafter insisted to the psychologist that she complete an interim evaluation. He insinuated that he would sue her if she did not do so in the time he thought was appropriate. The psychologist asked the court to permit her to withdraw because she could not ensure her impartiality under threat of suit. The court did so in February 2011.

In deference to Marslek's criminal matter, the court delayed appointing a new custodial evaluator until June 2011, when Marslek reported the criminal matter had been dismissed and he was ready to proceed with the evaluation. The court appointed Dr.

3

Donald Fallin with the assent of both parties. Fallin completed his evaluation and provided the court with a 68-page report in January 2012.[2]

### *The Court's Hearing Regarding Custody and Visitation Rights*

In January 2012, the court commenced a hearing regarding custody and visitation rights, focusing on Fallin's evaluation report and recommendations. It asked Marslek, appearing in propria persona, if he intended to call any witnesses, such as Fallin, and Marslek indicated he did not. Marslek also indicated he had received Fallin's report in advance of the hearing and reviewed it in detail with his counselor, Robles. After reviewing some of Fallin's recommendations with the parties, the court admitted Fallin's report into evidence without objection.

The court then began stating various findings, including regarding Marslek's troubling behavior towards daughter, his partner, and two other women named Stalls and Wharter, his possession of assault weapons and commercial cultivation of marijuana, Fallin's conclusion that Marslek used inappropriate bullying and other intimidation methods to get his way, Marslek's criminal behavior, and his minimizing of his inappropriate actions, all of which we summarize further below in discussing the court's written findings and order after hearing.

Marslek disputed some of the court's findings, but acknowledged others. In doing so, he said he had "made a lot of mistakes" and promised "that it won't happen again," said his alleged assault on his wife was an accident, and denied abusing his daughter, although he said he believed her and supported her when she made an "allegation" that he did not otherwise identify. He asserted his marijuana cultivation was legal, "part of our history as a family," including with Ramirez, but agreed that "it was inappropriate to expose a child to that" and saw "now the problems that caused." He denied that his daughter was exposed to any weapons, and said no one knew about them "except the person who gave them to me," who told the police. He did not deny some kind of

---

[2] Neither party indicates that Fallin's report is contained in the record, and we have not located it there.

4

inappropriate behavior had occurred with Stalls, but claimed "that relationship went both ways," and denied inappropriate behavior towards Wharter.

The court stated some additional findings. It then said it was unable to complete the hearing that day and scheduled it to continue on February 22, 2012.

At the beginning of the February hearing, the court considered Marslek's recent ex parte request that Ramirez be ordered to allow blood toxicity testing of daughter, which Marslek claimed had been recommended by a pediatrician. Marslek told the court daughter apparently was "very ill." He referred to a letter from a doctor (to which Ramirez's attorney waived a hearsay objection), which the court reviewed and found did not indicate daughter was sick; the court also expressed its concern that Marslek thought the letter indicated otherwise. When Marslek attempted to recount his discussions with the doctor, the court ruled they were inadmissible hearsay. It denied Marslek's ex parte motion and awarded $400 of attorney fees to Ramirez.

The court resumed its hearing regarding custody and visitation rights. Marslek stated he did not anticipate calling any witnesses, did not request a trial, and did not make any procedural objections. The court continued to state its findings, relying heavily on Fallin's report in doing so. Again, Marslek made no objections to the bases for the court's findings.

The court then turned to its implementation of Fallin's recommendations. Marslek objected to professional supervision, stating it had been going on for too long and was unnecessary. The court indicated these issues had already been discussed, and that changes were possible in the future if Marslek made progress.

Near the end of the hearing, the court encouraged Marslek to work with his counselor regarding Fallin's recommendations. When the court referred to the report's discussion of incidents between Marslek and his daughter, as well as between Marslek and other adults, and that Marslek had not taken responsibility for these incidents, Marslek stated, "they're not true." When the court indicated that was a problem, Marslek stated for the first time—ignoring that the court had already made its findings and was now discussing what orders it would issue based on them— "We need a trial then."

5

When the court indicated the hearing was completed, Marslek said he might bring a motion for a full trial and the court indicated he could do so.

### The Court's September 2012 Written Findings and Order

In its September 2012 written findings and order, the court found that Fallin's report was admitted into evidence, both parties waived their rights to have a trial on it, and both indicated they did not have witnesses to present at the February 2012 hearing.

The court further found that Marslek "had assault weapons in his possession, grew marijuana at a commercial level, threatened [daughter] if she told about the marijuana operation and frightened [daughter] on three different occasions, two of which involved putting his hand on her." Marslek "denies the severity of his intimidation of his daughter." The court quoted Fallin's opinion that " '[Marslek] has interrogated, threatened and put his hands on [daughter] while angry causing [daughter] to feel terrified. This qualifies as psychological abuse.' " Also, the court found, daughter was molested by a third party while under Marslek's care. The court also noted that Fallin indicated Marslek had never physically harmed daughter and was not likely to do so in the future.

The court quoted the following section of Fallin's report as "extremely important": " '[Marslek] chose to introduce [daughter] to his marijuana cultivation operation.' 'Dr. Fallin characterizes this as inappropriate, reckless and unempathetic. It was not appropriate for [daughter] to be there. [Daughter] was an innocent child when [Marslek] took her to that warehouse. [Marslek] makes it very clear that he believes he did nothing wrong in growing the marijuana, keeping weapons, and exposing [daughter] to the marijuana enterprise. It is certain that if he engages in similar behavior, in the future, he would have no qualms about further enabling [daughter] to be involved.' " The court agreed with Fallin's assessment.

The court also found that "[t]here are other incidents and interactions with other adults referenced in [Fallin's] report that indicate [Marslek's] behavior is a pattern." Marslek had assaulted his partner, assaulted Wharter, and "acted inappropriately" towards Stalls. The incidents with Stalls and his partner were not controverted and "were

6

criminal" under the Penal Code. The court cited Fallin's opinion that Marslek had harmed or frightened petitioner, his partner, Wharter, and Stalls, and Fallin's conclusion that " '[Marslek] uses bullying, intimidation, controlling speech and physical aggression to control others and get his needs met when he is upset.' "

The court also concluded that Marslek experienced "diminished control" when he drank, which had led to criminal behavior. This included when he pulled his partner's hair out.

The court noted that nothing in Fallin's report indicated Marslek admitted that any of his actions were wrong. To the contrary, Marslek denied daughter was molested while in his care, claimed the incident with Stalls was "a misunderstanding, a joke," and the incident with his partner was a "mistake, inadvertent." Marslek also had excuses for the marijuana cultivation and the assault weapons.

The court also found that Ramirez "assaulted [Marslek] and vandalized [Marslek's] property for which she was arrested and not prosecuted."

The court concluded that daughter was "aligned" with Ramirez, but did not reject Marslek. Rather, she feared his "unpredictable anger and controlling behavior. This fear is based wholly on [daughter's] experiences and not on the things that her mother has done or said." Ramirez's behaviors undermined Marslek and did nothing to heal the father-daughter issues, but were not the cause of the problems. The court found that daughter enjoyed her time with Marslek and his family and that the supervised visitation provided her with the safety she needed to enjoy this time.

The court rejected a number of Fallin's conclusions. These included that there was "nothing to be gained by continued supervised visits." The court thought Fallin "minimizes the severity of [Marslek's] behavior and does not accurately weigh the relationship between the behavior and the impact on [daughter]." It found "it a problem that [Marslek] has not admitted, acknowledged or shown that he [Marslek] understands his behavior." It also found that Marslek had "crossed different boundaries," including with Stalls, his partner, and his daughter, Marslek "went over a social and criminal boundary with the guns and the marijuana," and "the only person willing to enforce

7

boundaries against [Marslek] are the paid professional supervisors." This need for supervised visitation was based in part on Marslek's "animosity toward [Ramirez] and his inability to control this to the point that even the adults in [Marslek's] life, including the professional supervisor, cannot get him to stop and have to walk away sometimes." Further, daughter "does not have the ability to either control [Marslek's] behavior and/or walk away on her own."

The court issued numerous orders. These included that the parents continue to have joint legal custody and Ramirez have primary physical custody of daughter; Marslek be entitled to supervised visitations with daughter every Sunday for up to six hours, to be paid for by him, and up to four full custodial weekends per calendar year subject to certain conditions; Marslek not drink alcohol from 12 hours before his custodial time until after it was over; and daughter alternate between parents during major American holidays and attend Marslek's son's birthday parties.

The court further ordered that daughter was to continue her therapy, Marslek and Ramirez were to individually seek anger management treatment, and Marslek was to explore with his therapist the relationship between alcohol and his behavior. The parents were not to verbally assault the other in front of daughter or otherwise involve her in their feuding, nor physically discipline her, and were ordered to address in therapy what they could say about each other that was positive and look for opportunities to make such statements in front of daughter. The parents were ordered not to "cultivate marijuana, even for personal use," openly display firearms in their home, nor enable daughter to handle or discharge firearms. Ramirez was to pay for daughter's therapy and child care, while Marslek was to pay for the supervised visits, $250 in support, and $400 for Ramirez's attorney fees.

Marslek subsequently filed a notice of appeal from these September 2012 written findings and order.

## DISCUSSION

### I. *Marslek's Claims Regarding a Trial*

#### A. *Marslek's Claim That He Did Not Knowingly or Consensually Waive Trial*

Marslek first argues that he did not knowingly or consensually waive his fundamental right to a jury trial, while Ramirez argues he has no such right.

As our summary of the facts indicates, at the beginning of the January 2012 hearing, Marslek did not present any witnesses nor object to the admission into evidence of Fallin's evaluation report. The court found in its September 2012 findings and order that Marslek waived any right to trial at the February 2012 hearing as well. Marslek does not dispute any of these matters in his appeal.

Instead, Marslek directs our attention to his statement at end of the February 2012 hearing, after the court had stated its findings, that Fallin's references to certain incidents were "not true" and that "[w]e need a trial then." When the court indicated the hearing was done, Marslek said he might make a motion for a full trial, and the court indicated that he could do so. Nothing in the record indicates that he did so. Given these undisputed facts, it appears that Marslek waived any right to a jury trial and never properly sought one, even assuming for the sake of argument that any existed in the procedural context of the action below.

As for legal support, Marslek cites only one statutory provision and one case. The statutory provision, subdivision (d)(3) of Code of Civil Procedure section 631, does not exist, nor does section 631 or the case cited contain the material quoted by Marslek. The case, *Trizec Properties, Inc. v. Superior Court* (1991) 229 Cal.App.3d 1616, 1619, involves a contractual waiver to a jury trial contained in a landlord-tenant lease. Marslek does not explain what relevance it might have to the present case, and it is not apparent that it has any.

#### B. *Marslek's Claim That He was Denied a Full and Fair Trial*

Marslek also claims the court improperly interfered with his "discovery" activities regarding daughter's schooling and medical care, thereby denying him due process under the 14th Amendment and thwarting his fundamental right of parentage.

Marslek's confusing claim appears based on his contention that the court "intimidated" him from further pursuing "discovery activities" when the court told him in the course of reviewing his ex parte application at the beginning of the February 2012 hearing that his inquiries to third parties about his daughter's schooling and medical care could result in his losing legal custody of his daughter "if you drive all these providers crazy." Marslek also claims the court somehow obstructed his right to call witnesses regarding the authentication of his communication with the child's pediatrician, an apparent reference to the court's determination that these communications were inadmissible hearsay, and improperly ordered him to pay $400 in attorney fees. He summarily argues the court failed to provide a proper statement of reasons for its ruling regarding joint custody pursuant to Family Code section 3082, and should have agreed to his request that it read him portions of a transcript of a prior hearing when he asked the court to do so at hearing, thereby denying him his right to a fair hearing.

Marslek cites little, if any, legal authority for these claims, and does not discuss that which he does cite. We have reviewed the court's statements and actions complained of and find nothing improper. Marslek appears to be criticizing the court for its efforts to, first, encourage him to work on his behavioral problems in order to gain further access to his daughter—an obvious necessity given the court's factual findings of his problematic behaviors and, second, conduct a hearing according to proper legal procedure, much of which Marslek appears to have ignored in representing himself.

**C.  *Marslek's Claims Fail Because He Has Not Meet His Burden as Appellant***

We need not discuss these matters further, however, because Marslek has not met his elemental responsibility as appellant. Although not pointed out by Ramirez, " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the

10

record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "[C]onclusory claims of error will fail." (*Ibid.*)

Based on this presumption, Marslek's failure to present any meaningful legal analysis, and his conclusory arguments, we reject his claims that he did not knowingly or consensually waive any fundamental right to a trial and that the court denied him his right to a full and fair trial. Further, a review of the record presented discloses no denial of Marslek's right to a full hearing.

## II. *Marslek's Lack of Substantial Evidence Claims*

Next, Marslek argues that we must reverse the lower court because there was not substantial evidence to support its order that his visitations with daughter be supervised, any finding of psychological abuse or potential of harm by him against daughter, nor any finding that he engaged in acts of criminality and endangerment.

Specifically, Marslek challenges the court's supervised visitation order by citing his attorney's denial that he physically abused daughter and the court's initial lack of concern in April 2010 that he would do so, as well as the court's "double sided" statement that "the fact that he has done well under supervision does not mean that he would do well without supervision." He argues the court exercised "unreasonable and arbitrary judgment" and "flawed logic" that have placed him in "an impossible and unfair situation" because he will be punished "for good behavior." He also cites Fallin's conclusions, cited by the court in its written findings and order, that he had never physically harmed daughter and was not likely to do so in the future. According to Marslek, "[t]he court erroneously finds the need to maintain supervised visitation despite the preponderance of evidence that the child is in no danger of [Marslek] including by the court's own findings."

Marslek next contends in a single, conclusory sentence that there is no substantial evidence that he psychologically abused daughter, citing without explanation a DSM-5 definition for psychological abuse and certain BAJI instructions.

Finally, Marslek challenges the court's findings that he engaged in "criminal" behavior and endangered others, such as his partner, by contending the court relied on

11

hearsay "from unknown and unreliable sources to make wild and broad assumptions of his character."

We reject Marslek's arguments for two reasons. First, he has once more failed to meet his elemental responsibility as appellant to affirmatively demonstrate error (in this case a purported lack of substantial evidence to support the court's rulings) by meaningful legal analysis. Instead, he quotes a series of passages from the record and claims error without further explanation. This is reason enough to reject his claims. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

Second, the record *does* contain substantial evidence to support the court's rulings. "Substantial evidence" is "evidence . . . '*of ponderable legal significance*, . . . *reasonable in nature, credible, and of solid value*.' " (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873.) "When a . . . factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . ." (*Id*. at pp. 873–874.)

In May 2010, Ramirez alleged that daughter had told her "Marslek is physically and mentally torturing her. [Daughter] stated Marslek interrogates her, holding her down on the ground grabbing her jaw to the point where she could not breathe. . . . [Daughter] is terrified and has no one to turn to." At the January 2012 hearing, the court read the following passages from Dr. Fallin's report: " '[Marslek] uses bullying, intimidation, controlling speech and physical aggression to get to his agenda to control others and get his needs met when he is upset.' " " 'It is the evaluator's opinion that [Marslek] has interrogated, threatened and put his hands on [daughter] while angry, causing [daughter] to feel terrified. This qualifies as psychological abuse. It is also the evaluator's opinion that he has harmed or frightened . . . his partner, . . . Wharter and . . . Stalls.' " The court agreed with Fallin's factual conclusions, finding that Marslek had assaulted Wharter, acted inappropriately towards Stalls, assaulted his partner, threatened daughter if she told

12

about his marijuana operation, and frightened her on three different occasions, two of which involved his putting his hands on her. However, the court disagreed with Fallin's conclusion that there was nothing to be gained from continued supervised visits, concluding that Marslek "hasn't admitted, acknowledged or shown that he understands his behavior."

Marslek did not deny that most of these incidents had occurred. Instead, he quibbled with the facts and denied their import, providing support for the court's conclusion that he did not understand his behavior. Referring vaguely to his daughter's "allegation," he denied abusing her but indicated he believed her and supported her making it. He characterized the incident with his partner as an "accident," and did not deny some kind of inappropriate behavior had occurred with Stalls, claiming only "that relationship went both ways."

In addition, Fallin and the court considered it inappropriate for Marslek to have involved his daughter in his marijuana cultivation, and found that he had possessed assault weapons. Marslek, while he asserted his marijuana cultivation was legal, did not deny that he had involved his daughter in cultivation and that it was inappropriate. To the contrary, he stated at the January 2012 hearing that "it was inappropriate to expose a child to that" and saw "now the problems that caused." He also did not deny that he had possessed assault weapons. Rather, he acknowledged his possession when he said no one knew about them other than the person who told the police.

The court also made other findings, including that Marslek's drinking had affected his behavior and daughter had been molested while in his care. Marslek does not directly challenge these findings in his opening brief.

In our view, these events provided substantial evidence to support the court's rulings, and Marslek does not explain why they do not. Instead, he in effect asks us to reweigh the evidence in his favor. This is inappropriate under our substantial evidence standard of review. (E.g., *Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 903.)

13

For each of these two reasons, we reject Marslek's lack of substantial evidence claims.

### III.  *Marslek's Medical Marijuana Claims*

Marslek also makes two claims related to the use of medical marijuana.

First, he presents what he characterizes as a "matter of law," arguing that, since California Business and Professions Code section 2904 bars a psychologist from prescribing medical marijuana, "it should be presumed that a psychologist has neither the authority to proffer a recommendation against the prescription or recommendation of a licensed medical physician, for to do so by the psychologist [an apparent reference to Fallin], would be tantamount to practicing medicine without a license."  "Therefore," Marslek continues, "absent a legal determination . . . under the Welfare and Institutions Code [section] 300, subdivision (b), a court should not accept any recommendation of a clinical psychologist regarding legally prescribed medicine."

Second, Marslek argues that "[t]here is no sufficient evidence in the record based in legal fact to find that [Marslek] was either illegally cultivating marijuana or his activities within the purview of [daughter] harmed or endangered [daughter]."

Again Marslek has failed to meet his elemental responsibility as appellant to affirmatively demonstrate error by sufficient citation to facts in the record and meaningful legal analysis.  (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)  For example, he cites to nothing in the record indicating these issues were raised and ruled upon below, that the court or Fallin prohibited medical use,[3] that his cultivation had been for medical use only, that he has a valid prescription to use medical marijuana, or that the trial court abused its discretion in ruling that the parents should not grow marijuana for personal use after Marslek conceded that he inappropriately involved daughter in marijuana cultivation that led to his arrest, and that he had possessed assault weapons.  Thus, his arguments are not a basis

---

[3]  Notably, the court stated that neither parent "shall cultivate marijuana, even for personal use."  It did not refer to "medical use," such as from sources other than personal cultivation, for example.

for reversal of any part of the court's order, regardless of whether Marslek's marijuana cultivation was legal or illegal.

### IV. *Marslek's Other Arguments*

Marslek lists 17 different issues as presented by him in the appeal, not all of which are further briefed. Also, in his statement of the case, he makes other conclusory and/or inchoate arguments, unsupported by meaningful legal analysis, about the evidence and the court's actions, such as that the court improperly relied on hearsay and "tortured [Marslek] by withholding his child unless he admits to criminal acts or wrongdoing that he has denied as untrue hearsay." We reject all of these arguments as also insufficiently presented. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

Given our conclusions, we do not discuss the other arguments and contentions made by the parties.

# DISPOSITION

The court's findings and order challenged by Marslek are affirmed in their entirety.


_____
Brick, J.*


We concur:


_____
Kline, P.J.


_____
Richman, J.


\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.