Filed 5/15/14  In re Rickey A. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re RICKEY A. et al., Persons Coming Under the Juvenile Court Law. | B251893<br>(Los Angeles County<br>Super. Ct. No. CK82545) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.A.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  D. Zeke Zeidler, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court adjudged minors Rickey A. (born in 1998), E.F. (born in 2000), S.F. (born in 2002), and Richard F. (born in 2003) dependents of the court under Welfare and Institutions Code section 300, subdivision (b) (failure to protect).[1]  C.A. (Mother) appeals from (1) the court's order of September 16, 2013, denying that part of her August 19, 2013 section 388 petition requesting liberalized visitation; and (2) the court's order of September 4, 2013, summarily denying without a hearing that part of her August 19, 2013 section 388 petition requesting the reinstatement of reunification services.

Mother contends that the juvenile court abused its discretion in denying that part of the section 388 petition requesting liberalized visitation.  We disagree because Mother failed to establish changed circumstances that made liberalization of visitation in the best interests of the minors.  Mother also contends that the court erred in summarily denying without a hearing that part of the section 388 petition requesting the reinstatement of reunification services.  We disagree because Mother showed, at best, changing rather than changed circumstances, and failed to show that the proposed change of order would promote the best interests of the minors.  Travis D., father of Rickey A., is not a party to this appeal.  Rickey F., father of E.F., S.F., and Richard F., is not a party to this appeal.  We affirm the orders of the court.

## BACKGROUND

### A.  The detention report

On January 23, 2012, the Department of Children and Family Services (DCFS) reported the following in connection with a detention hearing before the juvenile court to determine whether the minors should be removed immediately from the care of Mother.

Mother has an extensive child welfare history, including a voluntary family maintenance case based on domestic violence between Mother and a former boyfriend, that had been opened and closed in 2005.  A second voluntary family maintenance case was opened in 2009, but was not successfully resolved, and the minors were removed

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

from Mother in June 2010. In September 2010, the juvenile court sustained a section 300 petition that alleged Mother placed the minors at substantial risk of harm due to her nine-year history of drug abuse; and that Mother had mental and emotional problems, including a diagnosis of schizophrenia and depression. Mother reunified with the minors in December 2011. Mother has a fifth child who is not a party to this appeal and whose father, Carlton H., has full custody of her.

On December 6, 2011, DCFS received a referral that Richard F. showed his teachers a scar on his leg and told them that his uncle Mike had burned his leg with a lit piece of paper.

On December 17, 2011, DCFS received another referral that Mother's boyfriend Brad D., had hit S.F. on top of her head twice with his hands and placed Mother in a choke hold when she tried to protect S.F. During that incident, Brad threw a chair at Mother, then pushed her into a china cabinet, breaking it.

On December 17, 2011, DCFS investigated Mother's home and found it to be filthy. DCFS and Mother agreed to a safety plan for Mother and the minors to stay in a motel, paid for by a voucher, and for Mother, who admitted that she was "still using marijuana," to complete a drug test the next day. The next day, Mother called DCFS to say she wanted to leave the minors with paternal grandparents because she was not certain she could get a motel voucher.

On January 13, 2012, Mother failed to submit to an on-demand drug test. The minors were removed from Mother on January 18, 2012, due to Mother's "uncooperative behavior, resistance to comply with DCFS services, the children confirming 2 referrals, the unsanitary condition of Mother's home, Mother's inability to provide stable housing for the children, prior DCFS history, and Mother's admittance to continue marijuana use." The minors were placed in maternal grandmother's care.

**B. The section 300 petition**

On January 29, 2012, DCFS filed a section 300 petition on behalf of the minors. As amended and sustained, paragraph b-1 of the petition alleged under section 300, subdivision (b) that on December 17, 2011, Brad engaged in a violent altercation in front

3

of the minors by striking Mother's face and body with his fist, choking Mother, and throwing a chair at Mother. Mother had failed to protect the minors in that Mother had a history of violent relationships with male companions and exposed the minors to the male companions' violent conduct.

As amended and sustained, paragraph b-2 of the petition alleged under section 300, subdivision (b) that on December 17, 2011, Brad physically abused S.F. by striking her head with his hands.

As amended and sustained, paragraph b-3 of section 300, subdivision (b) alleged that Mother had a history of substance abuse, including marijuana, and was a recent user of marijuana and that in December 2011, and on prior occasions, Mother was under the influence of illicit drugs while the minors were under her care; and the minors were prior dependents of the juvenile court due to Mother's substance abuse. Allegations filed pursuant to section 300, subdivisions (a) and (j) were dismissed.

## C. The jurisdiction/disposition report

On March 5, 2012, DCFS reported the following in connection with the jurisdictional and dispositional hearing, at which the juvenile court determines whether the minors shall be declared dependents and issues orders for the minors' care.

Mother told DCFS that she had met Brad at a drug treatment program, after he had "'got out on parole.'" Mother stated that her relationship with Brad was "good." Brad picked her up from work and she stayed overnight at his house and then she would leave in the morning to take care of the minors. On December 17, 2011, Brad, Mother, and S.F. were sitting on the couch watching television. After Brad suddenly hit S.F. on the head, Mother told him not to hit S.F. Brad hit S.F. again, then grabbed Mother by the neck and pushed, hit, and shoved her. Mother asked Brad to leave. He then punched her in the face, pushed her into a china cabinet, and picked up a chair to throw at her. Richard F. went into the kitchen, and returned with a vase, which Mother used to hit Brad. Brad then left the house.

Mother said she had last used marijuana in December 2011, after she lost her job and was stressed because of the fight with Brad. When asked why she had not submitted

4

to drug testing, Mother denied that DCFS had asked her to drug test. She stated that she used marijuana outside the home when the minors were in the care of maternal grandmother, and claimed that her drug use did not affect her ability to care for the minors. Mother denied that Brad had ever before shown violent tendencies toward her or the minors.

The minors confirmed that Brad had hit S.F. for no reason, Mother tried to stop Brad from hitting S.F., then Brad started choking Mother. E.F. said Mother used "'weed. It was brown.'" E.F. stated that after DCFS told Mother that she had to stop smoking marijuana because there was no food in the house, Mother attended programs and stopped smoking marijuana.

S.F. reported that Brad had hit her "'[f]or no reason'" on an occasion previous to the incident of December 17, 2011.

Richard F. stated that Brad was "'mean.'" He stated that the last time he had been at Brad's house, Brad had socked him in the arm and made him go outside because Richard F. was "'calling for my mommy.'" Mother was taking a bath when this occurred. Mother told Brad to stop hitting Richard F. Richard F. said that Brad "'likes hitting my sisters. I don't like it, so I hit him back.'"

Maternal grandmother stated that Mother's marijuana use had increased when she started dating Brad. Maternal grandmother said that before she started smoking marijuana "'again,'" Mother "'was doing good, she was working. She was helping me with the kids. When she start with this guy, I think she star[t]ed smoking again.'" Maternal grandmother said that in order to be a better mother, Mother needed to "'[s]top using that marijuana and stop drinking too.'" She stated that Mother stayed overnight at Brad's house, but checked up on the minors every day. However, Mother allowed the minors to "'go with people that I don't know.'" Maternal grandmother reported that she had left Mother and the minors at maternal grandmother's apartment when she left for a few weeks to take care of maternal great-grandmother. When she returned, the stove was dirty, there were dirty dishes piled up, and Brad had broken dishes.

5

A March 5, 2012 report by DCFS indicated that Mother did not report for drug testing on February 15, 2012 as ordered.

## D.  The jurisdictional and dispositional hearing

On March 5, 2012, Mother submitted a signed waiver of rights form, which was accepted by the juvenile court.  The court sustained the section 300 petition as amended and ordered the minors placed with maternal grandmother.  The disposition hearing was set for April 16, 2012.

In its April 16, 2012 report for the dispositional hearing, DCFS reported that Mother was a no-show for drug testing on February 24, 2012; tested positive for marijuana on March 14, 2012; and was a no-show for drug testing on March 23, 2012. Mother had enrolled in a drug treatment program on January 27, 2012, and after initially inconsistent attendance, had participated in 18 group sessions and 4 individual sessions. Mother was having difficulty discontinuing use of marijuana and agreed with DCFS that she might receive more benefit from inpatient treatment.

At the April 16, 2012 contested dispositional hearing, the juvenile court removed the minors from the care of Mother and ordered them placed in the care of DCFS for suitable placement.  The court ordered DCFS to provide family reunification services and a referral to an inpatient drug treatment program for Mother.  The court ordered Mother to participate in individual counseling to address case issues, parenting classes, domestic abuse counseling, alcohol counseling, a 12-step program; and random weekly drug testing.  The court ordered monitored visits for Mother.

## E.  Further reports show Mother continuing to struggle with her drug problems

On October 15, 2012, DCFS reported that Mother was assessed for an inpatient drug treatment program at Didi Hirsch agency, but failed to show up at the program on August 21, 2012. A counselor at the inpatient program reported to DCFS that no one wanted to fight Mother, and she just wanted an excuse to leave the drug treatment program.  Mother then assured DCFS that she was not going to leave the Sheltering Arms program.

6

On October 3, 2012, Mother left a voice message with DCFS stating that she had left the Sheltering Arms program. Mother then admitted she was still using drugs and asked to be readmitted to the program.

DCFS reported that Mother had not complied with court orders and did not participate in services. In the meantime, the minors were thriving in the care of maternal grandmother.

On March 20, 2013, DCFS filed a report stating that Mother was homeless and had enrolled in an outpatient drug treatment program with Homeless Health Care Los Angeles on February 11, 2013.

In an April 24, 2013 last minute information report, DCFS reported that Mother was not drug testing.

## F. The 12-month review hearing

On April 24, 2013, the juvenile court conducted a contested 12-month review hearing, found Mother was in partial compliance with the case plan, terminated her family reunification services, and scheduled a section 366.26 hearing to select a permanent plan for the minors.

## G. Section 366.26 report

On August 19, 2013, DCFS reported that the minors remained placed with maternal grandmother and appeared happy and well-adjusted. The minors stated that they felt safe in her care and expressed a strong desire to remain with her. Maternal grandmother was a certified nursing assistant, had stable housing, was financially able to care for the minors, and was capable of providing for the minors' emotional, physical, educational, and medical needs. Maternal grandmother reported that she was not interested in adoption but was committed to providing long-term care for the minors until they reached the age of 21. Maternal grandmother reported no problems or concerns with Mother's weekly monitored visits.

DCFS opined that legal guardianship with maternal grandmother was the most appropriate plan for the children. DCFS recommended that Mother's visits remained monitored due to her inability to make meaningful progress in addressing the issues that

7

caused the minors' detention, her inability to maintain a sober lifestyle, and failure to complete a domestic violence program. DCFS recommended the juvenile court grant legal guardianship to maternal grandmother.

## H. The section 388 petition and hearing on the petition

On August 19, 2013, Mother filed a section 388 petition to modify the juvenile court's orders, requesting the court to reinstate Mother's family reunification services and order liberal visitation with the minors. Mother claimed she was actively participating in a domestic violence program for victims, attended weekly individual counseling, saw a psychiatrist weekly, took medication as prescribed, attended a substance abuse program, attended parenting classes, was actively involved with the minors' school activities, and spent as much time as she could with the minors. Mother urged that the best interests of the minors would be promoted by the change in orders because "Mother is in compliance with the case plan originally ordered by the Court and is very closely bonded with the children."

Mother attached the following documents to the section 388 petition: (1) a letter dated August 14, 2013, from JWCH Institute confirming Mother had been participating in its substance abuse treatment program since June 3, 2013; (2) a letter dated August 13, 2013, from Homeless Health Care Los Angeles indicating Mother had participated in six individual psychotherapy sessions, since March 15, 2013; (3) a letter dated August 14, 2013, from Para Los Ninos, indicating that Mother had attended 3 sessions of a domestic violence program; (4) a letter dated August 14, 2013, from Homeless Health Care Los Angeles, indicating Mother had entered treatment on February 11, 2013 and would complete treatment on February 11, 2014, had attended 39 "Stages of Change Groups," 11 anger management classes, 10 parenting classes, 15 women's issues classes, 16 family matters group weekly sessions, and 14 weekly sessions with a counselor; (5) a letter dated August 15, 2013, purportedly signed by maternal grandmother stating that Mother was "good to her kids," participated in the minors' lives, visited the minors, helped maternal grandmother with household tasks, gave the minors money, and volunteered at the minors' school. Mother also attached a certificate of appreciation for volunteering at

8

an elementary school dated May 22, 2013, and a certificate of recognition from Homeless Health Care Los Angeles dated April 1, 2013.

On September 4, 2013, the juvenile court summarily denied Mother's section 388 petition regarding her request to reinstate family reunification services because the proposed change of order did not promote the best interests of the minors and there was "no legal basis to reinstate family reunification services with the [section 366.26 hearing] pending." Regarding Mother's request for liberalized visitation with the minors, the court granted a hearing for September 16, 2013.

On September 16, 2013, DCFS reported that Mother had not maintained sobriety, refused to participate in drug testing, failed to comply with the court-ordered domestic violence program, and maternal grandmother stated she had neither written nor signed the letter dated August 15, 2013, that was attached to Mother's section 388 petition. DCFS recommended that liberalizing Mother's visits to unmonitored would pose a risk to the minors.

On September 16, 2013, the juvenile court conducted a contested hearing on Mother's section 388 petition regarding her request for liberalized visitation. The court stated, "It's not clear to me that [DCFS] contacted someone at J.W.C.H. Institute to find out if — what the format is for the random weekly drug screens through them and what the mother's results have been since she entered on June 3 into a 16-week program." Mother's counsel argued that DCFS had only contacted maternal grandmother and that Mother claimed maternal grandmother had signed the letter with her signature that was attached to the section 388 petition. The court then observed that maternal grandmother had said, "[I]t was neither written nor signed by her." Mother's counsel requested that DCFS "contact the programs and actually do an assessment of Mother," but did not request a continuance for DCFS to do an assessment. Mother's counsel stated that Mother was "at odds with her mother currently. [Maternal grandmother] does not wish to monitor." The court denied Mother's section 388 petition and ordered DCFS to prepare a detailed written visitation schedule, that DCFS would have discretion to liberalize Mother's visits, and that DCFS's section 366.26 report include interviews of Mother's

9

service providers from her section 388 attachments, including the nature of the drug testing of the programs.

Mother's appeal followed.

## DISCUSSION

### A. The juvenile court did not abuse its discretion in denying Mother's section 388 petition with respect to liberalized visitation

Mother contends that the juvenile court abused its discretion by denying that part of the section 388 petition requesting liberalized visitation because she established changed circumstances that made liberalized visitation in the best interests of the minors. We disagree.

Section 388, subdivision (a)(1) provides, "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . or the child himself or herself . . . through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court . . . to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

"At a hearing on a motion for change of placement, the burden of proof is on the moving party to show by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change of placement in the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Ibid.*) "This determination [is] committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established." (*Id.* at p. 318.)

In our view, the juvenile court acted within its discretion in determining that liberalized visitation was not in the minors' best interests. Our review shows the court properly evaluated the evidence, noting that it had considered the section 388 petition and DCFS's report and requested further information as to Mother's circumstances at the hearing.

As to changed circumstances, Mother cites the letters attached to the section 388 petition, outlining the number of sessions, random drug testing screens, and domestic violence sessions that she had attended, arguing that the DCFS report was inadequate because it did not mention Mother's participation at JWCH and in the domestic violence program at Para Los Ninos or mention that DCFS had contacted Homeless Health Care Los Angeles, Mother's prior therapist, or the minors' elementary school. She also argues that even though maternal grandmother denied writing the letter attributed to her which was attached to the section 388 petition, "her signature on the letter is identical to her signature on the legal guardianship paperwork" and supports reports by maternal grandmother that Mother's visits were appropriate.

Regardless of any failure by DCFS to interview Mother's service providers, the attached letters only show evidence of changing, and not changed circumstances. According to the letters, Mother had not yet completed the domestic violence program in which she had enrolled at Para Los Ninos; Mother was scheduled to complete treatment programs provided by Homeless Health Care Los Angeles on February 11, 2014, which would have been six months after the section 388 petition hearing; and Mother had been participating in JWCH Institute's substance abuse treatment program only since June 3, 2013, which was a year and a half after the minors had been removed from Mother's care in January 2011. In sum, Mother had not yet successfully completed any programs. Mother's visitation with the minors had never progressed to unmonitored due to her inability to make meaningful progress in addressing the issues that caused the minors' detention, her inability to maintain a sober lifestyle, and failure to complete a domestic violence program. We observe that Mother's inability to resolve the issues of domestic

11

violence and drug abuse involved the same long-standing issues she had been unable to resolve in June 2010.

In her reply brief, Mother argues for the first time that the juvenile court abused its discretion by failing to grant a brief continuance to obtain reports regarding Mother's drug test results. Points raised for the first time in a reply brief on appeal will not be considered absent good cause for failure to present them earlier. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.) Mother's failure to ask the court for the continuance resulted in forfeiture of any right to raise it on appeal. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338 ["a parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court"].) In any event, a few negative drug tests would only have been proof of changing, and not changed circumstances.

Further, to the extent Mother asks us to reweigh the evidence regarding whether Mother or maternal grandmother wrote and signed the letter purportedly written by maternal grandmother, we cannot do so.

With respect to the best interests of the minors, Mother argues that she shared a significant and positive relationship with them; visited them regularly; maintained a parental role in their lives; and helped them with laundry, homework, and housecleaning. But the minors had been removed from Mother's care for a year and a half and were thriving in the stable, drug-free, violence-free home of maternal grandmother, who was willing to provide long-term care for them until they reached the age of 21. The minors expressed their desire to stay in the home of maternal grandmother. Although the minors appeared to enjoy their visits with Mother, at the time of the hearing, as stated by Mother's counsel, Mother had not been having visits with the minors because "she's at odds with [maternal grandmother] currently. [Maternal grandmother] does not wish to monitor."

We conclude the juvenile court did not abuse its discretion in determining that there was not any new evidence or changed circumstances making a change of placement serve the best interests of the minors.

**B.  The juvenile court did not abuse its discretion in summarily denying without a hearing Mother's section 388 petition with respect to reinstating family reunification services**

Mother contends that she presented prima facie evidence to support an evidentiary hearing on her section 388 petition with respect to her request for reinstatement of reunification services and therefore the juvenile court's summary denial of the petition was an abuse of discretion.  We disagree.

With respect to a petition filed pursuant to section 388, subdivision (d) provides: "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice . . . ."

"[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition."  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)  "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition."  (*Ibid.*)  We review the juvenile court's order for abuse of discretion.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  Changed, not changing, circumstances must be demonstrated.  (*Ibid.*)

We conclude Mother did not establish a prima facie showing of a change of circumstances or that a change of order would be in the best interests of the minors.

Mother incorporates her previous arguments, claiming she had established a prima facie change of circumstance that she had "substantially complied with the case plan." She argues that her relationship with the minors was "significant and strong."  As discussed above, we conclude that Mother has offered a bare scintilla of proof of changing, not changed, circumstances.  (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610 [mere prima facie showing of changing circumstances insufficient to justify hearing on section 388 petition after two years of removal].)  Thus, the juvenile court did not

abuse its discretion in finding Mother failed to make a prima facie showing of changed circumstances.

Moreover, because the minors are to be placed with maternal grandmother, it is unlikely that the minors will be deprived absolutely of a relationship with Mother. We conclude that Mother did not show how the minors' best interests would be served by depriving them of a permanent, stable home in exchange for an uncertain future.

Accordingly, we conclude that the juvenile court did not err by denying Mother a hearing on her section 388 petition with respect to reinstitution of reunification services.

## DISPOSITION

The juvenile court's order of September 16, 2013, denying C.A.'s August 19, 2013 Welfare and Institutions Code section 388 petition requesting liberalized visitation and the court's order of September 4, 2013, summarily denying without a hearing her August 19, 2013 section 388 petition requesting the reinstatement of reunification services are affirmed.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14